STATE OF MINNESOTA, *ex rel.* Edward E. Davidson, *vs.* E. S. GOR-
MAN, Judge of Probate.

## March 7, 1889.

**Constitution — Taxes — Arbitrary Fee in Probate Proceedings.**—The
statute requiring, as a condition precedent to probate proceedings for the
settlement of estates, the payment to the county treasurer of specified
sums arbitrarily prescribed with reference to the value of the estate in
question, *held* unconstitutional, being contrary to those clauses requiring
equality of taxation, and the dispensation of justice freely and without
purchase.

*Mandamus.* Appeal by defendant from an order of the district
court for Ramsey county, *Simons* and *Kelly*, JJ., presiding, directing
the issuance of the peremptory writ.

*Moses E. Clapp*, Attorney General, *J. J. Egan*, and *M. R. Tyler*, for
appellant.

*Williams & Goodenow*, for respondent, (relator.)

DICKINSON, J.   The proceeding in which this appeal is taken was
*mandamus*, requiring the probate court to proceed to the settlement
of the estate of William F. Davidson, deceased, that court having re-
fused so to do until payment should be made to the county treasurer,
as prescribed by statute, of the sum of $5,000, the estate having
been inventoried at more than $500,000.   The district court held
this requirement of the statute to be unconstitutional.   The statute
(Gen. St. 1878, *c.* 7, §§ 5, 7–9, as amended by Laws 1885, *c.* 103,) pre-
scribes annual salaries as compensation for the services of judges of
probate, " in lieu of the fees, costs, and perquisites " theretofore allowed
by law.   Section 8, as amended in 1885, (Laws 1885, *c.* 103,) declares
that, " for the purpose of reimbursing the county treasury for the sal-
aries provided to be paid in this act to the judge of probate, it shall
be the duty of each executor, administrator, or guardian to pay or
cause to be paid to the county treasurer, for the use and benefit of
the county in whose probate court proceedings are to be instituted to
settle the estate of any deceased person, minor, spendthrift, or insane
person, the following sums, according to the value of the estate and

property of such deceased person, minor, spendthrift, or insane person, shown by the inventory and appraisal; that is to say." Then follows a statement of the amounts to be thus paid, which are: $10, where the inventory exceeds $2,000, and does not exceed $5,000; $25, where it exceeds $5,000, and does not exceed $10,000; $35, where it exceeds $10,000, and does not exceed $15,000; $50, where it exceeds $15,000, and does not exceed $20,000; $75, where it exceeds $20,000, and does not exceed $35,000; $100, where it exceeds $35,000, and does not exceed $50,000; $200, where it exceeds $50,000, and does not exceed $75,000; $300, where it exceeds $75,000, and does not exceed $100,000; $500, where it exceeds $100,000, and does not exceed $150,000; $800, where it exceeds $150,000, and does not exceed $200,000; $1,000, where it exceeds $200,000, and does not exceed $500,000; $5,000, where it exceeds $500,000; "and, in addition, such executor, administrator, or guardian shall pay all sums necessarily expended in serving or publishing notices required by law." In section 9 it is declared that "no proceedings of any kind shall be had in any cause pending in such probate court for the settlement of any estate, subsequent to the return of the inventory showing the value of such estate, until" such payment shall have been made.

The two constitutional provisions claimed to stand in the way of such legislation are section 8, art. 1, which declares that every person "ought to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformably to the laws;" and section 1, art. 9, providing that "all taxes to be raised in this state shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state."

We have no doubt that it is in the power of the legislature to require suitors and litigants to pay reasonable, legally-prescribed fees or costs. The constitutional right to obtain justice freely and without purchase, which is as ancient as *Magna Charta*, has not been understood to be a right to have judicial proceedings carried on without expense to the parties. *Adams* v. *Corriston*, 7 Minn. 365, (456;) *Willard* v. *Com'rs of Redwood Co.*, 22 Minn. 61; *Perce* v. *Hallett*, 13 R. I. 363; *Hewlett* v. *Nutt*, 79 N. C. 263; *Harrison* v. *Willis*, 7 Heisk. 35.   But the

sums required by this act to be paid into the county treasury must be regarded as *taxes* in the ordinary sense of that word, and as it is used in the constitution. They are not in any proper sense fees or costs assessed impartially, or with regard to the expense occasioned or services performed. The amounts are regulated wholly, but arbitrarily, with regard to the value of the estate. They have no proximate relation to the amount of the compensation to be paid to the probate judge, nor to the other expenses of the court, nor to the nature or extent of the services which may become necessary in the proceedings. There is no necessary, natural, or even probable correspondence between the sums to be paid (widely different in amounts with respect to estates of different values) and the nature of the proceedings, or the character or extent of the services, which may be required in the probate court. It cannot be assumed, upon any ground of probability, that these proceedings or services will be different or greater in the case of an estate of the value of more than $500,000 than in one of the value of from $35,000 to $50,000,—yet in the former case $5,000 must be paid, in the latter, $100. The formerly-existing law for the payment of fees for the services of the probate judge is superseded. The only compensation which the probate judge may now receive for the performance of his judicial duties is a salary, fixed in amount, and payable from the county treasury. That salary is in no manner dependent upon, or affected by, the amounts which may be paid into the county treasury under this law; and, if such payments shall exceed the amount of the judge's salary, no reimbursement to the estates or persons making such payments is contemplated. The money remains in the treasury, a part of the general county funds. The declared purpose of the statutory requirement here under consideration is "reimbursing the county treasury for the salaries provided to be paid in this act to the judge of probate." The purpose for which such payments are required is strictly public in its nature, being directly "for the use and benefit of the county," as the law declares, and indirectly for the support of a court established by the constitution, with exclusive original jurisdiction in certain matters of great and general public concern. Nor is it practically optional with executors or administrators, or those inter-

ested in the settlement of the estates of deceased persons, as to whether they will pay these exactions or not. If the law is valid, payment is practically necessary in the great majority of cases; and the mode adopted by the statute of securing payment, by making that a condition precedent to the exercise of the functions of the probate court, is as really compulsory, and perhaps as effectual in general, as the means generally employed to enforce the payment of taxes.

It is thus apparent that these exactions are "taxes," in the general and in the precise meaning of that word, and, if the constitutional rule of approximate equality has been disregarded, the law cannot stand. It seems hardly necessary to refer particularly to the schedule of values and of amounts required to be paid to show that the law wholly fails, in apportioning the burden imposed, to regard the constitutional rule of equality, measured with reference to the value of the property taxed. In the first place, estates not exceeding $2,000 in value are wholly exempt from any contribution. If estates are taxable in this manner at all, such an exemption is contrary to the requirement of the constitution. *Le Duc* v. *City of Hastings,* 39 Minn. 110, (38 N. W. Rep. 803.) Again, while the schedule of sums to be paid is arranged somewhat with regard to values, yet this is done arbitrarily, and not upon any rule of percentage; and the burden is very unequally distributed, as measured by the standard of values. To illustrate, an estate of a little less than $50,000 pays a tax of $100, or about one-fifth of 1 per cent. of the value; an estate 10 times larger pays a tax 50 times larger, ($5,000,) or about 1 per cent. of the valuation; an estate of $500,000 pays a tax of $1,000, while an estate inventoried at $500,001, $1 in excess of the former, pays a tax of $5,000. While a large discretion must be allowed to the legislature in devising schemes for taxation, so as to secure equality as nearly as may be, it can hardly be doubted that in this case the constitutional requirement was not observed, very likely for the reason that it was not considered that these exactions were "taxes" within the meaning of the constitution. We feel certain that they must be so regarded.

The same reasons for the conclusion that these exactions consti-

tute an unconstitutional mode of taxation, lead also to the conclusion that the law is opposed to section 8, art. 1, of the constitution. Suitors in this (probate) court of exclusive jurisdiction should not be required to pay, as a condition to their suits being entertained, a tax measured by the value of their property, and without regard to the nature or extent of the judicial proceedings which may be invoked or become necessary. That would be contrary to that clause of the constitution which guaranties justice "freely and without purchase, completely and without denial."

Order affirmed.