## COOK COUNTY

*v.*

## KELLOGG FAIRBANK *et al.*

*Opinion filed October 23, 1906.*

1. CONSTITUTIONAL LAW—*provision relating to fees of officers construed.* Section 12 of article 10 of the constitution, providing that the legislature shall by general law, uniform in its operation, provide for and regulate the fees of State, county and township officers so as to reduce the same to a reasonable compensation for services actually rendered, contemplates that the fees of probate clerks shall be based upon the amount and character of services performed, and not upon the value of the estates probated.

2. SAME—*act fixing graduated docket fee for probate clerks is unconstitutional.* The provision of the act of 1879, (Laws of 1879, p. 164,) entitling probate clerks in counties of the third class to a graduated docket fee, based upon the value of the estate upon which application is made for letters testamentary or of administration, guardianship or conservatorship, is unconstitutional, as being an attempt to impose a burden upon estates, in the nature of a tax, for the purpose of raising revenue for public purposes. (*People* v. *Hinrichsen,* 161 Ill. 223, distinguished.)

3. SAME—*act fixing graduated docket fee for probate clerks can not be sustained as an inheritance tax.* The provision of the act of 1879 fixing a graduated docket fee for probate clerks, based upon the value of the estate, cannot be sustained as an inheritance tax, since the act, by its terms, includes estates of minors, insane persons, drunkards and spendthrifts, as well as estates of deceased persons, and charges the burden upon the estate itself, and not upon the right of inheritance.

4. ASSUMPSIT—*when money paid under protest may be recovered.* Money paid by executors to the probate clerk under protest, to obtain letters testamentary which he refused to issue until the sum was paid to him as his fees, may be recovered in an action of assumpsit, where the clerk had no legal right to the fee demanded and where the exigencies of the estate required immediate attention by the executors, acting under authority of the letters.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

HARRY A. LEWIS, WILLIAM F. STRUCKMANN, and FRANK L. SHEPARD, for appellant:

The fee in question was not paid under such circumstances as would constitute duress or compulsion. The payment was voluntary, and therefore no action will lie. *Yates* v. *Insurance Co.* 200 Ill. 202; *Otis* v. *People,* 196 id. 542; *Walser* v. *Board of Education,* 160 id. 272; *Falls* v. *Cairo,* 58 id. 403; *Stover* v. *Mitchell,* 45 id. 213; *Elston* v. *Chicago,* 40 id. 514.

The provisions of the constitution of the State concerning fees and salaries are for the purpose of declaring a rule of uniformity as to class of officers and class of counties, and the contemporaneous construction of all branches of the government as to the powers of the legislature to regulate fees upon the basis of the value of the estate should be of controlling weight. *Kreitz* v. *Behrensmeyer,* 149 Ill. 496; *Nye* v. *Foreman,* 215 id. 285; *People* v. *Hinrichsen,* 161 id. 223.

PENCE & CARPENTER, for appellees:

The act entitled "An act to provide for fees of probate courts in counties of the third class," approved May 29, 1879, in force July 1, 1879, as amended, is unconstitutional and void in so far as it relates to the payment of a docket fee out of the estates of decedents, in that the fees thus provided for are not a reasonable compensation for services rendered, but are arbitrary exactions, graded according to the value of the estate. Const. 1870, art. 10, sec. 12; *State* v. *Case,* 1 L. R. A. 152; *State* v. *Mann,* 76 Wis. 469; *State* v. *Gorman,* 40 Minn. 232; *Fatjo* v. *Pfister,* 117 Cal. 83; *In re Cope's Estate,* 191 Pa. St. 1.

The payment of the docket fee, under the circumstances of this case, was a payment under duress, and not a voluntary payment, and hence assumpsit will lie to recover the same. *Chicago* v. *Insurance Co.* 218 Ill. 40; *Mearkle* v. *County of Hennepin,* 44 Minn. 546; *State* v. *Nelson,* 41 id. 25; *Har-*

*vey* v. *Olney,* 42 Ill. 336; *County of LaSalle* v. *Simmons,* 5 Gilm. 513; *Railroad Co.* v. *Coal Co.* 79 Ill. 121; *Pemberton* v. *Williams,* 87 id. 15; *Chicago* v. *Sperbeck,* 69 Ill. App. 562; *Swift Co.* v. *United States,* 111 U. S. 22; *Joannin* v. *Ogilvy,* 49 Minn. 564.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action of assumpsit commenced by Kellogg Fairbank and Benjamin Carpenter, appellees, as the executors of the last will and testament of Nathaniel K. Fairbank, deceased, in the superior court of Cook county, against Cook county, the appellant, to recover the sum of $1250, which, as such executors, the appellees had paid under protest to Patrick J. Cahill, as clerk of the probate court of Cook county, for the docket fee provided to be paid in an act entitled "An act to provide for fees of clerks of probate courts in counties of the third class," approved May 29, 1879, in force July 1, 1879, and the various amendments thereto, (Hurd's Stat. 1905, par. 63, chap. 53, p. 1075,) which amount had been turned over by said Cahill, as such clerk, under the statute, to the treasurer of said Cook county prior to the bringing of this suit. The general issue was filed and the case was tried before the court without a jury, which trial resulted in a finding and judgment in favor of the appellees for said sum of $1250 and costs, and Cook county has prosecuted an appeal direct to this court on the ground that the constitutionality of the paragraph of said statute which provides for the payment of said docket fee is involved, and upon propositions of law submitted was held to be void by the trial court, which paragraph reads as follows:

"On application for the grant of letters testamentary, of administration, guardianship or conservatorship, it shall be the duty of the applicant to state in his or her petition the value of all the real and personal estate of such deceased person, infant, idiot, insane person, lunatic, distracted person, drunkard or spendthrift, as the case may be, and on the grant

of letters testamentary, administration, guardianship or conservatorship, there shall be paid to the clerk of said probate court, from the proper estate, and charged as costs, a docket fee as follows: When the estate does not exceed $5000, $5; and the sum [of] one (1) dollar for each and every additional $1000 of the estate of such deceased person, infant, idiot, insane person, lunatic, distracted person, drunkard or spendthift, as the case may be. In all cases where any deceased person shall leave him or her surviving a widow or children resident of this State, who are entitled out of said estate to a widow's or child's award, and the entire estate real and personal of such deceased person shall not exceed $2000, and in the case of any minor whose estate real and personal does not exceed the sum of $1000, and whose father is dead, and in all cases of any idiot, insane person, lunatic, or distracted person, drunkard or spendthrift, when such person has a wife or infant child dependent on such person for support, and the entire estate of such person shall not exceed the sum of $2000, the probate judge (by order of court) shall remit and release to such estate all of the costs herein provided for. In all estates not exceeding $500 in value, the judge of the probate court may in his discretion suspend, modify or remit the costs by order of court duly made."

The record shows, without dispute, that the last will and testament of Nathaniel K. Fairbank was duly proven, admitted to probate and ordered recorded in the probate court of Cook county on the 20th day of May, 1903, and on that day it was ordered that letters testamentary issue to the appellees; that on the fifth day of June following, the appellees demanded of said Cahill that he issue and deliver to them said letters testamentary, which he declined to do unless they paid to him, as a condition precedent to their delivery, a docket fee of $1250 which had been taxed by him against said estate; that thereupon the appellees filed their petition in the probate court of said county, in which they represented that the affairs of said estate needed immediate and particu-

lar attention, and that they, as the executors thereof, could not enter upon the discharge of their duties as such executors without possession of their letters testamentary and that great loss might come to said estate if the delivery of said letters was further delayed, which letters, they averred, the said Cahill, upon demand, had refused to deliver to them unless they first paid to him the sum of $1250 as a docket fee. They also averred the paragraph of the statute requiring the payment of said docket fee was unconstitutional and void, and asked that said clerk be ordered to deliver said letters to them forthwith and without the payment of said docket fee. The prayer of the petition was denied, and the appellees again protested, in writing, against the payment of the said docket fee, but the clerk still persisted in his refusal to deliver said letters without the payment of said docket fee, whereupon the appellees paid to him, in open court, said sum of $1250, and thereupon brought this suit to recover back the amount so paid.

We will first consider the constitutionality of the paragraph of the act of 1879 above set forth.

Section 12 of article 10 of the constitution of 1870 provides: "The General Assembly shall, by general law, uniform in its operation, provide for and regulate the fees of said officers [State, county and township] and their successors, so as to reduce the same to a reasonable compensation for services actually rendered."

While the amount demanded of the appellees by said clerk as a condition precedent to the delivery to them of their letters testamentary is designated in the statute "a docket fee," it is apparent that the amount exacted by the clerk was in no way measured by the amount or value of the services performed by him, but the charge against the estate depended entirely upon the size or amount of the estate. If an estate does not exceed in value $2000 no docket fee is to be taxed. If it is more than that amount and does not exceed in value $5000 a docket fee of $5 is to be taxed, or if the estate is of

the size of the Fairbank estate a fee of $1250 is to be taxed, although the docketing of the estate, in each case, in the office of the clerk of the probate court would require the same amount of labor by the clerk, and no more.  The provision of the constitution above referred to, required the General Assembly, by general law, uniform in its operation, to regulate the fees of county officers in such manner that the fees charged and collected by them shall be "a reasonable compensation for services actually rendered."  Clearly, the framers of that provision of the constitution intended that the fees of probate courts in counties of the third class should be based upon the amount, quality and character of the services performed by the clerks of said courts, and not arbitrarily fixed on the basis of the value or amount of the estates which might pass through those courts, and we think it evident the amount designated in said statute as a docket fee was not intended by the framers of said statute to represent the value of services actually rendered by the probate clerk in each estate in docketing the estate, but that said statute was intended by its framers to furnish a means whereby the public revenues of counties of the third class in the State would be increased, by collecting through the probate court a charge upon the designated estates.  The amount sought to be retained by the probate clerk was therefore, properly speaking, not a fee, but was a burden or charge imposed upon said estate to raise money for public purposes, regardless of the value of the services actually rendered the estate, which is in conflict with the constitutional provision hereinbefore set forth, and which would bring said burden or charge within the well recognized definition of a tax, which may, in a general sense, be defined to be a burden or charge imposed by the legislative power of the State upon persons or property for public uses.  *Dalrymple* v. *City of Milwaukee,* 53 Wis. 178.

The view that a charge fixed by statute for the service to be performed by an officer where the charge has no relation

to the value of the services performed, and where, as here, the amount collected eventually finds its way into the treasury of the branch of government whose officer or officers collect the charge, is not a fee but a burden or charge in the nature of a tax, has been held in numerous cases in the United States. In *State* v. *Case,* 1 L. R. A. (N. S.) 152, decided by the Supreme Court of Washington in July, 1905, and wherein was involved the constitutionality of a statute which required the payment of $5 in probate proceedings at the time the first paper was filed, and thereafter, when the appraisement was returned into court, an additional sum was to be paid, as follows: $2.50 for estates between $1000 and $2000, increasing on a sliding scale, depending on the value of the estate, the court said (p. 155): "It is true the statute calls the charge a 'fee,' but if it is apparent upon the face of the statute that the charge is, in fact, not based upon actual and necessary services rendered or to be rendered, but is based entirely upon a property valuation, thereby partaking of the nature of a tax, it would seem to be wholly immaterial by what name the statute may designate it. * * * His services [those of the clerk] in the premises are purely clerical, and the amount thereof depends upon the filings and records of each particular case, which can in no reasonable sense be said to depend in each given case upon the value of the estate. It seems clear, therefore, that this statute exacts payments regulated by property valuations alone, and that it must therefore be a tax upon property.

In *State* v. *Mann,* 76 Wis. 469, *mandamus* was brought to compel the county judge to proceed with the administration of an estate. The statute required the administrators to pay to the county treasury, for the use of the county, in lieu of fees, a sum equal to one-half of one per cent on $500,000 of the appraised value of said estate and one-tenth of one per cent on the excess, which amounts, as taxed, aggregated the sum of $2631.95. Payment was required on the return and approval of the inventory and was made a part of the

expense of administration. The court, in holding the act unconstitutional, on page 477, said: "Besides, the amount of this exaction is in no way dependent upon the amount or value of such services of the judge or register of probate, but depends entirely upon such valuation or appraisal of the estate. * * * Compensation for services must necessarily be graduated by the amount, quality and character of the services. But here the amount exacted bears no relation to such services. * * * We must hold that the exaction in question is not a probate fee, nor in lieu of nor equivalent to a probate fee. It is nothing less than a charge imposed by the legislature as a condition precedent to allowing the county court to proceed with the administration of this estate. Such charge is necessarily a burden so imposed upon such administrators or such estate, or both, to raise money for public purposes. This brings it within a well recognized definition of a tax. * * * It is very obvious that the charge imposed by the act in question is essentially a tax."

And in *State* v. *Gorman,* 40 Minn. 232, *mandamus* was brought to compel the probate court to proceed with the settlement of an estate, which it had refused to do until the sum of $5000 was paid. The statute provided graduated fees, dependent upon the value of the estate as shown by the inventory. Between $2000 and $5000 a fee of $10 was exacted, ascending with the value of the estate, until it provided that in estates of over $500,000 a fee of $5000 should be charged. The court, on page 233, said: "But the sums required by this act to be paid into the county treasury must be regarded as taxes, in the ordinary sense of that word and as it is used in the constitution. They are not in any proper sense fees or costs assessed impartially or with regard to the expense occasioned or services performed. The amounts are regulated wholly, but arbitrarily, with regard to the value of the estate. They have no proximate relation to the amount of the compensation to be paid to the probate judge, nor to the other expenses of the court, nor to the nature or extent of the ser-

vices which may become necessary in the proceedings. There is no necessary, natural or even probable correspondence between the sums to be paid (widely different in amounts with respect to estates of different values) and the nature of the proceedings, or the character or extent of the services which may be required in the probate court."

And *Fatjo* v. *Pfister*, 117 Cal. 83, was an action in which the clerk of the superior court of Santa Clara county was sought to be coerced to file an inventory and appraisement, which he had refused to do until the sum of $200 was paid him as fees. The statute required the payment of $5 on the filing of the petition for letters of administration, also an additional payment of one dollar for each $1000 of the appraised valuation of the estate in excess of $3000, as shown by the inventory and appraisement. The Supreme Court held the charge to be a tax, saying (p. 85): "It is perfectly plain that the legislature has attempted, by that portion of section 1 above quoted, to levy a property tax upon all estates of decedents, infants and incompetents. The *ad valorem* charge for filing the inventory is in no sense a fee or compensation for the services of the officer, which are the same, as respects this matter, in every estate, large or small. To call it a fee is a transparent evasion."

If the General Assembly, under the guise of a docket fee, has attempted, as we think it is apparent it has, to levy a property tax upon all estates of deceased persons, infants, idiots, insane persons, lunatics, distracted persons, drunkards and spendthrifts whose estates exceed the amounts designated in said statute and which are brought into the probate court of counties of the third class, then the paragraph attempting to impose said tax is clearly unconstitutional for numerous reasons other than that pointed out above. First, it violates section 13 of article 4 of the constitution of this State, because it embraces more than one subject and subjects that are not included in its title; second, it violates section 3 of article 9 of the constitution, in that it provides for

-exemptions of property from taxation not specified in said section; third, it subjects the property of the estate to double taxation, as it appears that the executors had paid all the taxes due upon the real and personal property of the estate in the years 1902 and 1903; and fourth, it violates section 1 of article 9 of the constitution, in this: that a tax is levied which is not equal or uniform as to the class upon which it operates.

Nor can the charge or burden imposed be sustained upon the ground that it amounts to no more than an inheritance or succession tax. The contention that it does amount to such tax is fully met by the fact that the statute in express terms applies not only to the estates of deceased persons, but also to the estates of infants, idiots, insane persons, lunatics, distracted persons, drunkards and spendthrifts. The tax here imposed is levied upon the body of the entire estate if it exceeds $2000 in value, whether the estate is solvent or insolvent, while an inheritance or succession tax is imposed, not as a tax upon the estate, but upon the right of succession. (*Kochersperger* v. *Drake*, 167 Ill. 122; *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283.) In the *Fatjo case* the Supreme Court of California said upon this branch of the case: "And it is not merely an inheritance tax or at all analogous to an inheritance tax, as counsel would contend, for, in the first place, it applies not only to the estates of decedents, but also to the estates of minors and incompetents under guardianship; and as to the estates of decedents, it applies not to the distributable residue after payment of debts and expenses of administration, but to the whole body of the estate, and would be collectible, if the law were valid, from an insolvent estate as well as from one of equal appraised value and with no liabilities." And in *State* v. *Case, supra,* the Supreme Court of Washington, in reviewing two cases cited in support of the constitutionality of the statute under consideration in that case, said (p. 155): "Neither of said cases relates to property taxation. The first discusses the

Inheritance Tax law, and expressly holds that such a tax is not a property tax but is a mere charge for the privilege of succession to the ownership and enjoyment of property, following *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, (42 L. ed. 1037, 18 Sup. Ct. Rep. 594,) which expressly distinguished such a charge from property taxes, which must be uniform and equal under the State constitutions."

It is urged by appellant that this court, in the case of *People* v. *Hinrichsen,* 161 Ill. 223, is committed to the view that the statute fixing the fees of the Secretary of State for incorporating corporations, which are graduated according to the amount of the capital stock of the corporation, is a valid exercise of legislative power. We are of the opinion there is a well marked line of distinction between the *Hinrichsen case* and the case at bar. It is the same line of demarkation pointed out in the inheritance tax cases heretofore referred to. An inheritance tax was sustained on the ground that it was not a tax upon property but upon the right of succession, and that the State had the right to prescribe rules of descent and conditions upon which property should be inherited. So with the right of the State to establish fees in cases of persons desiring to organize corporations. A corporation is a creation of the legislature. Persons are not obliged to incorporate against their will. If, however, they do incorporate they must accept the burdens imposed upon them by general law. Such, however, is not the case with the statute authorizing the collection of the docket fee mentioned in the statute now under consideration. That, as was said by Judge Cassoday in *State* v. *Mann, supra,* "is nothing less than a charge imposed by the legislature as a condition precedent to allowing the county court to proceed with the administration of this estate."

Our conclusion is, that the paragraph of the statute of 1879 authorizing the collection of a docket fee is unconstitutional and void.

The next and remaining question raised upon this record is, was the $1250 paid to the probate clerk of Cook county by the appellees under such circumstances that they may recover it back? In *City of Chicago* v. *Northwestern Mutual Life Ins. Co.* 218 Ill. 40, we find this statement of the law upon the subject now under consideration (p. 44) : "It is the well settled rule of this State that where one is compelled to make payment of money which the party demanding has no legal right to receive, in order to prevent injury to his person, business or property, such payment is, in law, made under duress and may be recovered from the party receiving it; and it makes no difference that the payment was made with full knowledge of all the facts, provided it was made under duress. Appellee, at the time of payment, expressly stated that it was made under protest and to avoid trouble and damage to its property. The payment was illegally exacted, and appellee had a right to recover in an action of assumpsit." In the case from the opinion of which the foregoing excerpt is taken, the city of Chicago had charged the Northwestern Mutual Life Insurance Company with back water rates for water supplied to former tenants of the premises. · The insurance company denied its liability and refused to pay, whereupon the city threatened to shut off the water unless the water bill was at once paid. The insurance company made payment under protest and· brought suit to recover back the money paid, and a judgment of recovery was had, which was affirmed by this court.

The case of *Mearkle* v. *County of Hennepin,* 44 Minn. 546, is very similar, upon its facts, to the case at bar. In that case the probate court refused to proceed with the administration of an estate until the tax under consideration in *State* v. *Gorman, supra,* was paid. The petitioners protested that it was illegal, but paid the same in order that they might proceed with the probate of the estate. An action was brought to recover back the money thus paid, and on the

question of duress the court held, among other things (p. 548) : "Included in the personal property of the estate was a large amount of commercial paper, bonds and stocks which required immediate attention on the part of the executors, and any delay in the settlement of the estate would have been of great detriment to the estate, and in order to properly manage and protect the estate, as is alleged, plaintiffs were compelled to, and did, make the payment.  *  *  *  The necessity for going on with the legally prescribed proceedings in the probate court for the administration, care and settlement of this very large estate is apparent from the facts stated.  The court, whose jurisdiction was exclusive, refused to exercise the necessary jurisdiction, acting in compliance with the express requirement of the statute.  The court decided that the statute must be complied with, and no appeal would' lie from the order of the court denying the petition of the plaintiffs.  No course was left to the executors but to pay the tax, as required by the statute and by order of the probate court, or to seek by *mandamus* proceedings, if that would have been a proper remedy, to secure a further adjudication as to the constitutionality of the law.  But if the latter course were pursued the proceedings for the administration of the estate would have remained in suspense until a final adjudication could be had, and in view of the facts that the payment was exacted by a statute law which had been in force and had been observed for several years; that the court having exclusive jurisdiction in this matter decided the law to be constitutional; that the plaintiffs could not know that the law was invalid or that it would be so declared to be by this court; of the magnitude of the interests involved, and of the fact that the plaintiffs might well consider that they would be deemed culpable if they were to suffer the administration of this estate to be delayed,—we think that the payment is to be deemed so far compulsory upon them that, being made under protest, the money may be recovered as an illegal exaction and not voluntarily paid."

In *State* v. *Nelson,* 41 Minn. 25, the court said (p. 27) : "It may be stated as a general proposition that a payment, under compulsion, of money unlawfully demanded does not conclude the party paying.  *  *  *  Nor is it necessary, in order to constitute compulsory as distinguished from voluntary payment, that the unlawful demand be made by an officer· who is prepared to enforce it by process.  There may be that kind and degree of necessity or coercion which justifies and virtually requires payment to be made of the illegal demands of a private person who has it in his power to seriously prejudice the property rights of another, and to impose upon the latter the risk of suffering great loss if the demand be not complied with."

In this case the estate consisted of stocks, bonds, promissory notes, open accounts, unclosed deals upon the board of trade, life insurance and one hundred and fourteen tracts of real estate, upon some of which there were due and unpaid taxes and special assessments, and the estate owed large sums of money evidenced by obligations which were maturing and some of which had matured.  It was therefore clearly necessary for the best interests of the estate that the executors act, and act promptly.  To do so it was necessary that they have the evidence of their authority to represent the estate in their possession.  They could obtain the evidence of such authority only by submitting to the payment of an illegal exaction amounting to a large sum of money, or by paying the same under protest and suing to recover back the amount so paid. They chose, as we think they had a right to do, the latter course.

Finding no reversible error in this record the judgment of the superior court will be affirmed.

*Judgment affirmed.*