Submitted on briefs without argument October 26, affirmed December 8, 1914.

## PACIFIC LIVESTOCK CO. *v.* COCHRAN.

(144 Pac. 668.)

**Waters and Watercourses—Appropriation—Proceedings—Fees for Determination of Water Rights by State Water Board—Voluntary Payment.**

1.   Section 6656, L. O. L., provides that if, in proceedings by the state water board to adjudicate water rights any claimant after notice shall fail to appear and submit proofs of his claims, he shall be barred from subsequently asserting any rights theretofore acquired on the stream or other body of water embraced in such proceeding, and shall be held to have forfeited all right to the use of the water theretofore claimed by him.   Section 6641 provides that, at the time of submitting proof of appropriation or of the taking of testimony for the determination of rights to water, the division superintendent shall collect from each claimant a fee of $1 for recording the water right certificate, and an additional fee graduated in accordance with the acreage for which water rights are claimed.   *Held,* that payment of such fees by claimant under protest, in proceedings so instituted in order that he might establish his claim and not suffer a forfeiture thereof, was not voluntary so as to preclude him from subsequently suing to recover the same on the ground that the fees exacted were illegal.

[As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799.]

73 Or.—27

States—Action Against—Illegal Taxes—Recovery—Parties Subject to Suit.

2. Where a state officer has collected an illegal tax or exaction and paid the same into the state treasury, as is his duty, an action to recover the same should be brought, not against him, but against the state.

Taxation—"Tax."

3. The word "tax," in common parlance and in the laws of the several states, is ordinarily used to express the idea of sovereign power exercised for a particular purpose, to wit, to raise money for general and ordinary governmental expenses, and as used in Article IX, Section 1, of the Constitution, requiring uniformity of taxation, means an exaction by the sovereign from a citizen without his consent, a charge or pecuniary burden, imposed on the individual or his property, to support the general government or for some special purpose for which the state may make requisition in a particular mode, and does not include fees required by claimants of water rights to be paid prior to the determination of their rights in proceedings instituted by the state water board for that purpose by Section 6641, L. O. L.

Constitutional Law—Waters and Watercourses—Due Process of Law —Fees—Appropriation—Proceedings.

4. Section 6641, L. O. L., requiring each claimant of water rights, submitting his claim to the state water board for determination, in proceedings by the board to establish water rights on a stream used for irrigation, to pay certain specified fees, graduated in accordance with the amount of land within the claim of each claimant, is not unconstitutional as depriving claimant of his property without due process of law; such fees being used to pay the expenses incident to the hearing and determination of the claims, to the survey of the land, etc.

Constitutional Law—Equal Protection of Laws—Discrimination.

5. Section 6641, L. O. L., requiring water claimants to pay specified fees as a condition precedent to their right to have their water rights determined in proceedings by the state water board for that purpose, in so far as it exempts from payment claimants having permits issued under Acts of 1909, was not discriminatory, in view of Section 6601, requiring the state engineer to exact in advance from an applicant for a permit to appropriate water exactly the same amount as fees which is exacted from claimants on final determination under Section 6641.

From Union: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE MC-BRIDE.

This is an action by the Pacific Livestock Company, a corporation, against George T. Cochran.

The complaint alleges that defendant is a member of the board of control of the State of Oregon, now designated as the state water board, and superintendent of water division No. 2, and recites:

"That prior to any of the times herein mentioned the said board of control of the State of Oregon determined to make a determination of the rights of all persons to the waters of Silvies River, and thereupon duly published notice requiring all parties claiming any rights therein to file statements of their claims and stating the time when the testimony would be taken, all in accordance with the provisions of Section 6636 of the General Laws of Oregon, and a copy of said notice was duly served upon plaintiff by registered mail, as provided by Section 6637 of said Laws of Oregon, and which notice required that said statement be filed with the defendant above named. * * Thereafter and on the 28th day of July, 1913, plaintiff duly delivered to the said defendant, as such superintendent of water division No. 2, its statement of its claims in and to the waters of Silvies River, duly sworn to and containing all of the matters required by Section 6638 of the Laws of Oregon, and thereupon requested the said defendant to receive and file the same. * * That said defendant then and there demanded of the said plaintiff the payment of the sum of $401.44, as an irrigation fee, and $1 as a certificate fee, before he would receive or file the said statement, and the said defendant then and there refused to file the said statement unless the said sum was paid to him.   That said plaintiff thereupon insisted that the said statement be received and filed by him without the payment of the said sum, but the said defendant refused to file or receive the same and illegally demanded and insisted upon the payment of the said sum as aforesaid. * * That the said plaintiff protested against the payment of the said sum on the ground that the same was illegal, extortionate and deprived the said plaintiff of its right to set up its rights and defend its rights in the matter of the said adjudication of the water rights of said river, and

deprived plaintiff of its property without due process of law, and deprived it of the equal protection of the law and prevented it from defending its rights without paying an exorbitant sum of money to the said defendant; and thereupon the said plaintiff under protest and involuntarily, and by reason of the compulsion of the said defendant, paid the said sum to the said defendant, and the said defendant took and received the same from the said plaintiff, and thereupon filed the said claim as aforesaid. At the time of the said payment the said plaintiff notified the said defendant that the said payment was made involuntarily and under protest, but the said defendant still does retain the said money and the whole thereof, and refuses to pay the same to plaintiff, and no part thereof has been repaid by defendant to plaintiff. * * That the said payment was made involuntarily and under compulsion and by reason of the illegal demands of the defendant as aforesaid, and his refusal to file the said document unless the said demands were complied with. * * That the said demand of the said defendant was wholly illegal and extortionate, and the said sum so demanded was not a proper fee or any fee for the filing of the said paper, and the said amount so demanded as aforesaid as a condition of filing said paper was illegal and the amount thereof was grossly and entirely out of all proportion to the services required by the said defendant in receiving and filing the said document, and the said amount was not a proper or any fee for the filing of the said document, but was an arbitrary tax and imposition placed upon plaintiff illegally preventing it from defending the proceedings which it was cited to defend as aforesaid.''

There was a prayer for judgment against defendant for $403.44. The defendant demurred generally, and, the demurrer having been sustained, plaintiff appeals.

Submitted on briefs without arguments under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi). AFFIRMED.

For appellant there was a brief over the names of *Mr. Edward F. Treadwell* and *Mr. John L. Rand.*

For respondent there was a brief submitted by *Mr. Andrew M. Crawford,* Attorney-General.

Opinion by MR. JUSTICE McBRIDE.

The judge of the Circuit Court made and filed a lengthy and exhaustive opinion, which, with certain exceptions hereinafter noted, we adopt as the opinion of this court. It is as follows:

"The above cause is before the court for decision on demurrer to the complaint. The allegations of the complaint are familiar to the attorneys for both parties, and hence it is unnecessary to set forth the allegations of the complaint in this opinion. Suffice it to say that this is an action to recover money, which has been paid to the defendant, as one of the water superintendents of the state, and a member of the board of control, and which was paid to him under and by virtue of the provisions of Section 6641, L. O. L., which provides as follows: 'At the time of the submission of proof of appropriation, or at the time of taking of testimony for the determination of rights to water, the division superintendent shall collect from each of the claimants or owners, a fee of $1.00 for the purpose of recording the water rights certificate, when issued in the office of the county clerk, together with the additional fee of 15c for each acre of irrigated land up to and including 100 acres, and 5c per acre for each acre in excess of 100 acres up to and including 1,000 acres, and 1c for each acre in excess of. 1,000. * * All fees collected by the division superintendent shall be accounted for at the following regular meeting of the board of control and paid by such board into the state treasury, except, however, those fees due, or to be paid to the county clerk.' A demurrer has been filed to the complaint upon the following grounds: 'That the complaint fails to state facts sufficient to constitute cause

of action against the defendant, in that the complaint shows upon its face that all the fees alleged to have been collected by the defendant, were·collected under and pursuant to the provisions of Section 6641, L. O. L., and hence were legally collected, and turned over to the state treasury of the state of Oregon.'

1. "It is contended by counsel for the defendant, in support of the demurrer, that the money paid to the defendant was a voluntary payment, and hence cannot be recovered back. It is alleged in the complaint that the money paid was paid under compulsion. However, I think that the complaint clearly shows that the only compulsion was the provisions of the water code requiring the same to be paid. Of course, it was optional with the plaintiff, whether it paid the money or not, that is, it was optional with the plaintiff whether it filed its claim; but if it did not file its claim, under the law its right to have the water it was entitled to have adjudicated ceased, and it could not afterwards have its rights adjudicated. Under these circumstances, I do not believe that the payment was such a voluntary payment that it could not be recovered. Under the authorities if the party paying the money has the right to contest the payment as a defendant in the case or has the right to enjoin the collection of the money without jeopardizing any of his rights, a payment made under such circumstances is a voluntary payment, and cannot be recovered.' Such is the doctrine of the case of *Johnson* v. *Crook County,* 53 Or. 329 (100 Pac. 294, 133 Am. St. Rep. 834), and also the case of *Trower* v. *City and County of San Francisco,* 152 Cal. 479 (92 Pac. 1025, 15 L. R. A. (N. S.) 183). The authorities also hold that where the delay will prejudice the rights of a party because payment must be made at a certain time, as a condition precedent to filing a claim or presenting proofs, etc., and where illegal fees are exacted by one in official authority, preventing the immediate exercise of an undoubted right, except on their payment, they may be recovered, although the party may have resorted to *mandamus* proceedings to compel the filing without payment:

*Trower* v. *City and County of San Francisco, supra; State* v. *Gorman,* 40 Minn. 232 (41 N. W. 948, 2 L. R. A. 701); *Fatjo* v. *Pfister,* 117 Cal. 83 (48 Pac. 1012). In the case at bar, the plaintiff was compelled to make the payment on or before the 22d day of August, 1912, the time set by the board for the submission of proof of appropriation, and, if it did not pay the fees on or before that time, it could not submit its proof. I think that the payment, under such circumstances, was an involuntary payment and therefore can be recovered.

2. "Again it is contended by counsel for the defendant, in support of their demurrer to the complaint, that this action should be brought against the state, instead of against the defendant whose duty it is, after receiving the money, to pay the same into the state treasury. The authorities seem to hold that although a tax or exaction may be illegal, yet if the officer, whose duty it is to collect the tax collects the same and turns it into the state treasury, the action should be brought against the state or municipality, instead of the officer: *Eugene* v. *Lane County,* 50 Or. 468 (93 Pac. 255); *Yamhill County* v. *Foster,* 53 Or. 124 (99 Pac. 286). The presumption of law is that official duty has been regularly performed: Section 799, subd. 15, L. O. L.; *Stephenson* v. *Van Blokland,* 60 Or. 247 (118 Pac. 1026); *Clark* v. *City of Salem,* 61 Or. 116 (121 Pac 416, Ann. Cas. 1914B, 205). Therefore the presumption is that the money collected from the plaintiff has been turned over by the defendant to the state treasury, but the complaint in this case alleges, in paragraph 7 thereof, 'but the said defendant still does retain the said money, and the whole thereof.' I think that this allegation raises an issue as to whether or not the defendant had possession of the money sought to be recovered at the time this action was commenced.

"Again, it is contended by counsel for the defendant, in support of their demurrer to the complaint, that the money was paid by the plaintiff to the defendant under and by virtue of the provision of Section 6641, L. O. L., which is a valid enactment, and therefore the plaintiff cannot recover the same. Counsel for the

plaintiff, on the other hand, claims that Section 6641, in so far as it gives the division superintendent the right to collect the fees specified in said section, is illegal and unconstitutional, and therefore the plaintiff has a right to recover the same. This is the most important question presented for decision by the demurrer to the complaint. Counsel for the plaintiff claims that the imposition of these fees is a tax, and violates the constitutional provision that a tax upon property shall be equal and uniform, and that, as the money derived from these taxes goes into the general fund of the state treasury, this property is bearing an unjust burden of taxation; the presumption being that it is already taxed for general revenue purposes: *Ellis v. Frazier,* 38 Or. 462 (63 Pac. 642, 53 L. R. A. 454).

3. ''While the matter is not free from doubt, yet I do not believe that upon principle and the better authority the exaction of these payments is a tax under the meaning of the word 'tax,' as applied to the raising of revenue. In the case of *State ex rel.* v. *Frazier,* 36 Or. 186 (59 Pac. 5), the Supreme Court of this state, in upholding the constitutionality of an act providing for the collection of what was alleged to be exorbitant fees amounting to a tax, says: 'The term ''taxation,'' both in common parlance, and in the laws of the several states, says Mr. Justice Sawyer in *Emery* v. *San Francisco Gas Co.,* 28 Cal. 345, 356, ''has been ordinarily used, not to express the idea of the sovereign power which is exercised, but the exercise of that power for a particular purpose, viz., to raise a revenue for the general and ordinary expense of the government, whether it be the state, county, town or city government.'' And it is in this sense the word is used in this section of the Constitution, under consideration (Article IX, Section 1). Assessment and taxation in themselves imply an exaction by the sovereign from the citizen without his consent, and a tax is a charge or pecuniary burden imposed upon an individual or his property for the support of the general government, or for some special purpose authorized by it for which the state may make requisition in a particular mode:

Burrough's Taxation, § 4; Cooley's Taxation, § 1.   It
operates *in invitum,* without the consent of the tax-
payer and without reference to any special benefit to
him as contradistinguished from the rest of the com-
munity or class alike, according to some uniform rate
or mode of assessment, or other just rule of apportion-
ment, and it would be giving to the section of the
Constitution under consideration an unnatural and
unwarranted construction to hold that the language,
"assessment and collection of taxes for state, county,
township or road purposes" was intended to refer to
anything other than to general or public taxes, to be
levied and collected for the benefit of the state, town-
ship or road district.'   Also, in the case of *Blackrock
Copper M. & M. Co.* v. *Tingey,* 34 Utah, 369 (98 Pac.
180, 131 Am. St. Rep. 850, 28 L. R. A. (N. S.) 255),
the court says: 'The contention that the act is void on
the ground that it offends against the uniformity clause
of the Constitution cannot be sustained.   Having de-
termined that the tax is not a tax upon property,
within the purview of the Constitution of this state, it
follows that the classification, the amount of the tax,
and the manner of collecting it, is a matter largely, if
not entirely, within the legislative discretion.'   Also,
in the case of *State ex rel.* v. *Frazier,* 36 Or. 186 (59
Pac. 5), the Supreme Court of this state in its opinion
says: 'It is claimed, however, that the case of *Man-
ning* v. *Klippel,* 9 Or. 367, is decisive on this point.
The authority of this case is very much impaired
by the subsequent cases of *Northern Counties Trust*
v. *Sears,* 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188),
and *Landis* v. *Lincoln Co.,* 31 Or. 424 (50 Pac. 530).'
The Supreme Court, also in the case of *State ex rel.*
v. *Frazier,* 36 Or. 186 (59 Pac. 5), in its opinion,
uses this language: 'And it is said by Mr. Justice
WOLVERTON, in *Northern Counties Trust* v. *Sears,* 30
Or. 388 (41 Pac. 931, 35 L. R. A. 188), "a law which
requires a fee to be paid to an officer, and finally
covered into the treasury of a county, for which the
party paying the fee receives some equivalent in re-
turn, other than the benefit of good government, which

is enjoyed by the whole community, and which the party may pay and obtain the benefit under the law, or let it alone, as he chooses, does not come within the category of an act for raising revenue." ' In the case of *Northern Counties Trust* v. *Sears, supra,* the court in its opinion says: 'The controlling feature which characterizes bills of this nature, says Mr. Justice JOHNSON, is that they impose taxes upon the people, either directly or indirectly, or lay duties, imposts or excises for the use of the government and give to the person from whom the money is exacted no equivalent in return, unless in the enjoyment in common with the rest of the citizens of the benefit of good government: *United States* v. *James,* 13 Blatchf. 207, Fed. Cas. No. 15,464. This case was instituted to test the validity of an act of Congress increasing the rate of postage upon third class matter, under the national Constitution providing that "all bills for raising revenue shall originate in the House of Representatives," and it was further observed by the court that: "A bill regulating postal rates for postal service, provides an equivalent for the money which the citizen may choose voluntarily to pay. He gets the fixed service for the fixed rate, or he lets it alone as he pleases, and as his own interests dictate." Hence it was concluded that the bill was not one for raising revenue.'

"The land owner, who files his claim with the board of control and pays his money to have his water right adjudicated, receives some benefit over the other taxpayers of the state, in that he has his water right adjudicated and obtains from the board of control a certificate showing his water right, which is certainly a benefit to him, in case he either desires to sell the land with the water right or the water right alone. Furthermore, it is optional with the land owner or the owner of the water right, whether he has his water right adjudicated or not. The fees are not paid simply as a filing fee, but cover all the services of a state engineer, and board of control in the surveying of the land, and making a plat thereof, taking the testimony and adjudicating the water right. Of course, the

greater the number of acres, the greater the labor in making the survey, taking the testimony, and making the determination.

"Counsel for the plaintiff in the able brief, which they have filed, have cited the court to numerous decisions of other courts, holding that acts of the legislature, exacting a fee in the administration of estates proportioned upon the inventoried value of an estate, are unconstitutional as imposing an extra burden upon the property belonging to the estate: *State* v. *Gorman,* 40 Minn. 232 (41 N. W. 948, 2 L. R. A. 701); *Cook County* v. *Fairbank,* 222 Ill. 578 (78 N. E. 895); *State* v. *Case,* 39 Wash. 177 (81 Pac. 554, 109 Am. St. Rep. 874, 1 L. R. A. (N. S.) 152). These decisions are all based upon the theory that the person paying the fees for the administration of the estate does not receive any benefit, by reason of the payment, and, furthermore, in most instances the fee is arbitrary and not fixed upon any rule of percentage. In the case of *State* v *Gorman,* the court says: 'It seems hardly necessary to refer particularly to the schedule of values and of amounts required to be paid, to show that the law wholly fails in apportioning the burden imposed, to regard the constitutional rule of equality, measured with reference to the value of the property taxed. In the first place, estates not exceeding $2,000 in value are wholly excepted from contribution. If estates are taxable in this manner at all, such an exemption is contrary to the requirements of the Constitution: *Le Duc* v. *City of Hastings,* 39 Minn. 110 (38 N. W. 803). Again, while the schedule of sums to be paid is arranged somewhat with regard to value, yet this is done arbitrarily and not upon any rule of percentage; and the burden is very unequally distributed, as measured by the standard of values. To illustrate, an estate of little less than $50,000 pays a tax of $100, or about one fifth of one per cent of the value; an estate ten times larger pays a tax fifty times larger $5,000, or about one per cent of the valuation; an estate of $500,000 pays a tax of $1,000, while an estate of $500,001, one dollar in excess of the former, pays a

tax of $5,000. * * Suitors in this (probate) court of exclusive jurisdiction should not be required to pay as a condition to their suits being entertained a tax measured by the value of their property, and without regard to the nature or extent of judicial proceeding, which may be invoked or becomes necessary.' In the case of *McMahan* v. *Olcott*, 65 Or. 537 (133 Pac. 836), the Supreme Court of the state held that where an act of legislature is constitutional the court cannot question the wisdom or policy of a law. Furthermore, the Supreme Court of this state has held, in a long line of decisions from *State ex rel.* v. *Malheur County*, 46 Or. 519 (81 Pac. 368), to *Miller* v. *Henry*, 62 Or. 4 (124 Pac. 197, 41 L. R. A. (N. S.) 97), that unless a court can say that it is satisfied beyond a reasonable doubt that an act of the legislative assembly is unconstitutional, it is the duty of the court to uphold it. For the reasons above given, the demurrer to the complaint will be sustained.

"Dated at La Grande, Oregon, this 30th day of March, 1914.          J. W. KNOWLES,
                                   "Circuit Judge."

4, 5. We cannot agree with the statement of the learned judge that it is optional with the land owner to have his water rights adjudicated. Section 6656 provides:

"Any such claimant who shall fail to appear in such proceedings and submit proof of his claims shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other body of water embraced in such proceeding, and shall be held to have forfeited all rights to the use of said water theretofore claimed by him."

It is evident that a failure by the claimant of a water right to appear and submit his claims when properly required to do so bars his right to assert it thereafter to the same extent that a party is barred who makes default after service of summons in a proceeding at

law; but it does not follow that, because the amount exacted is a necessary prerequisite to the claimant being heard in the action, he is thereby deprived of his property without due process of law. It is not necessary here to decide whether the proceeding by the board to determine water rights is judicial or administrative. To a large extent it is administrative, but, like many proceedings of that character, the board must also act in a *quasi*-judicial capacity. A determination of the water rights to a stream finally ends as a report to the Circuit Court, and a decree of final determination by that court. The board is required to take testimony which consumes the time of a stenographer paid by the state; to make, through the state engineer, an examination of the stream and the works diverting water therefrom, including the measurement of the discharge of the stream and of the capacity of the various ditches and canals; to examine and measure the irrigated lands and to gather such other data as may be necessary; to reduce the same to writing and make it a matter of record in the office of the state engineer; to make maps and plats of the various ditches and of the stream—all at the expense of the state. That these services are beneficial to the claimant and necessary to the preservation of his rights in the stream and the protection and assurance of his title goes without saying. The people in general, for instance taxpayers in the western part of the state, have little or no interest in the determination of the question as to whether the title of the Pacific Livestock Company to a particular quantity of water is settled one way or the other. The proceeding is primarily beneficial only to the parties in interest, and in justice they should bear their share of the cost. Nor does the fact that they are not the moving parties alter the

situation. It has always been the custom for courts to demand of litigants, whether plaintiff or defendant, fees to partly defray the expense of litigation—clerk's fees, trial fees, and others of like nature—and to forbid the filing of papers or the trial of a cause until such fees are paid. The only limit to this power is that the fee shall not be disproportionate to the service rendered. In the case at bar it is contended that the rule established by the statute is arbitrary and not so proportioned. It is, of course, difficult to fix a rule that will apply with mathematical nicety to every case, but in the present instance it is reasonable to assume that the expense to the state of the investigation, mapping, taking testimony and other acts involved in the determination of the claimant's rights will equal and in many cases exceed the amount of the fee charged; and that the method indicated by the act by which the amount is determined is eminently fair.

It is said, however, that the clause in Section 6641, L. O. L., which exempts from payment of this fee claimants having permits under the act of 1909, renders the act discriminatory; but, when Section 6641 is read in connection with Section 6601, the apparent discrimination is explained. The latter section requires the state engineer to exact in advance from the applicant for a permit to appropriate water exactly the same amount as fees which is exacted from the claimants upon final determination. The theory of the act seems to have in contemplation the fact that ultimately all claims to water rights in the streams of this state will have to be determined and settled by the board, and exacts in advance from the applicant for a permit the possible expense of a determination of his rights. Having paid this once, he in good conscience should not be required to pay it a second time. If anyone should

be heard to complain of discrimination, it would seem that the applicant for a permit is that person in so much as he may possibly be required to lay out of the use of the money contributed for a long period before his rights are finally determined.   However, as the taking out of a permit is purely a voluntary act which he may or may not leave undone, he cannot be heard to complain.   We are of the opinion that the construction of Section 6641 is as above indicated, although the language used is somewhat involved.   The whole section is as follows:

"At the time of the submission of proof of appropriation, or at the time of the taking of testimony for the determination of rights to water, the division superintendent shall collect from each of the claimants or owners a fee of $1 for the purpose of recording the water right certificate, when issued, in the office of the county clerk, together with the additional fee of fifteen cents for each acre of irrigated lands up to and including one hundred acres, and five cents per acre for each acre in excess of one hundred acres up to and including one thousand acres, and one cent for each acre in excess of one thousand; also twenty-five cents for each theoretical horse-power up to and including one hundred horse-power, and fifteen cents for each horse-power in excess of one hundred up to and including one thousand horse-power, and five cents for each horse-power in excess of one thousand horse-power up to and including two thousand horse-power, and two cents for each horse-power in excess of two thousand horse-power, as set forth in such proof, the minimum fee, however, for any claimant or owner in such cases to be $2.50, also a fee of $5 for any other character of claim to water.   All fees collected by the division superintendent shall be accounted for at the following regular meeting of the board of control and paid by such board into the general fund of the state treasury, except, however, those fees due, or to be paid to the county clerk.   But in cases of appropriations of water

made under a permit issued under the provisions of this act, only $1 recording fee above provided shall be so collected by the division superintendent."

Bearing in mind that the applicant for a permit is required by Section 6601 to pay in advance acreage fees, that is, graduated fees proportionate to the number of acres to be irrigated and a fee for recording his permit, and that he is required by Section 6633 to make final proof to the satisfaction of the board of control that his proposed appropriation has been perfected, it would seem that by the section above quoted it was intended to indicate that at the final determination no further fee should be collected from the appropriator under the act of 1909, beyond the sum of $1 necessary to record his certificate of final determination; that being the only fee not before exacted of him under the provisions of the previous section. But it was, no doubt, the intent of the lawmakers to require of other persons taking the benefit of the law by having their claims adjudicated under it to pay a like sum, as, at least, partial compensation for the expense to the state. In this we see no discrimination or unfairness, and certainly nothing that would satisfy us beyond a reasonable doubt that the act is unconstitutional.

The judgment is affirmed.          AFFIRMED.