Argued July 5, decided July 18, 1911.

## WATTLES v. BAKER COUNTY.

[117 Pac. 417.]

WATERS—IRRIGATION DISTRICTS—OFFICERS—POWER OF BOARD OF CONTROL—"DETERMINED RIGHTS."

1. Sess. Laws 1909, p. 319, § 4, relating to the duties of the Board of Control, consisting of two division superintendents and the State Engineer, provides that the division superintendent shall have control over the water masters of the several districts within his division, and may make regulations for fair distribution of water in accordance with the "determined rights" as may be needed. Section 11 provides that on petition to the Board of Control by water users, requesting determination of the relative rights, the board may "make a determination" of the rights, fixing a time for the taking of testimony, etc. Section 24 provides that, after compilation of said data and the filing of the evidence, the board shall cause to be entered of record an order "determining and establishing" the several rights. Section 27 makes it the duty of the circuit court to transmit a copy of the decree to the secretary of the Board of Control. Section 38 gives to the water master authority to regulate distribution of water among various users, "where rights have been determined, in accordance with existing decrees." *Held,* that the references to "determined rights" were only to such as were determined pursuant to said act, and the Board of Control did not have jurisdiction to supervise the distribution of irrigation water taken from a stream before the rights and priorities of the parties had been determined under said act, and the water master was not entitled to compensation for acting in such unauthorized distribution.

WATERS—IRRIGATION DISTRICTS—COMPENSATION OF OFFICERS.

2. Where a water master performs work at the direction of the division superintendent, as provided in Sess. Laws 1909, p. 331, § 42, he is not required to attach a copy of the order of his superior officer to his bill for services, as is required when the demand is made by water users.

WATERS—IRRIGATION DISTRICTS—COMPENSATION OF OFFICERS.

3. Allegations that plaintiff wrote sundry letters and consulted with sundry water users of his district on official business connected with the office of water master, and thereby consumed one day of his time, and that his claim of $5.00 therefor was rejected by the county court, stated a cause of action.

From Baker:   WILLIAM SMITH, Judge.

Statement by MR. JUSTICE MCBRIDE.

Plaintiff, N. G. Wattles, is water master of District No. 2 of Division No. 2 of Oregon.   The district embraces the whole of Baker County.

The first cause of action, in substance, is as follows: On July 16, 1909, the joint owners of the Newt Young ditch, which is situated in Eagle Valley, in District No. 2, theretofore having established their respective rights in such ditch by mutual agreement, being unable to agree as to the division and distribution of the water received through the ditch as between themselves, one of the joint owners made application by a written notice to plaintiff, as water master.   The notice gave the names of the joint owners of the ditch and the proportional interest of each therein, and stated that they were unable to agree as to the division and distribution of the water received through the ditch, and requested plaintiff, as water master, to take charge of the ditch and the division and distribution of its water.   At that time plaintiff was unable to perform all of the duties required of the water master of the district, but was compelled to and did appoint assistant water masters to perform those duties which he personally was unable to perform.   The crops situated near the lower end of the ditch were suffering for want of water for their irrigation, but the joint owners were unable to secure any water through the ditch for that purpose, because of the interference and diversion of the water therefrom by their co-owners, who were located at the head of the ditch.   Pursuant to such notice and by the authority and direction of the Superin-

tendent of Water Division No. 2 of the State, plaintiff, as such water master, proceeded to take charge of the ditch, and to select and appoint an assistant water master to divide and distribute personally the water flowing through the ditch.   In selecting and appointing such assistant, it was necessary for plaintiff to journey to Eagle Valley, a distance of 50 miles from Baker City, his residence, to go over the ditch with the assistant, and to point out and instruct him as to his duties in connection therewith.   The trip to Eagle Valley and the duties performed while there by plaintiff, as water master, consumed and occupied five days, to wit: from July 16 to 20, 1909, inclusive.   Plaintiff's compensation as water master is $5.00 per day, as provided by statute.   Prior to the commencement of the action, he presented to the county court a verified account of his services, approved by F. M. Saxton, water division superintendent, but payment was refused.

For a second cause of action, it is alleged that, on August 28, 1909, upon the written request of Thomas Whited, a water user of Upper Burnt River, in Baker County, F. M. Saxton, Superintendent of Water Division No. 2 of the State, directed plaintiff, as water master of such district, to take charge of the distribution of the water of such stream, and to divide and distribute the same in accordance with the terms of the decree of the circuit court of the State for Baker County in that suit in which Thomas Whited *et al.* were plaintiffs and Sam Cavin *et al.* were defendants.

It is further alleged that, at the date of the request, plaintiff was unable to perform all the duties of water master of such district; that the crops of Whited were suffering for want of water to irrigate them, by reason of the unlawful diversion thereof by the other parties to the decree, and that he therefore appointed W. R. Lawson assistant water master, and that he qualified and

Sig. 9

performed the duties of assistant water master for 10 days; that the agreed compensation of Lawson was $4.00 per day; that a properly verified account for these services was rejected by the county court, and that the claim has been assigned to plaintiff.

In the third cause of action, plaintiff alleges that he wrote sundry letters and consulted with sundry water users of his district upon official business connected with the office of water master, and thereby consumed one day of his time, and that his claim of $5.00 therefor was rejected by the county court.

Judgment was given against plaintiff on demurrer, and he appeals.

AFFIRMED IN PART: REVERSED IN PART.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Messrs. Saxton & Godwin,* with an oral argument by *Mr. F. M. Saxton.*

For respondent there was a brief and an oral argument by *Mr. William S. Levens,* District Attorney.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Plaintiff is the first water master appointed under the water code of 1909, and, while the amount involved in this action is small, yet, in view of the future operations of the Board of Control, in relation to the supervision of irrigation in this State, the questions arising upon this appeal are important.

The first question arising may be briefly stated as follows: Has the Board of Control any jurisdiction to supervise the distribution of the irrigation water taken from a stream before the rights and priorities of the parties have been determined, as provided by chapter 216, Session Laws of 1909? The Board of Control consists of two division superintendents and the State Engineer. Section 4 of the act cited is as follows:

"Said division superintendent shall have general control over the water masters of the several districts within his division.  He shall execute the laws relative to the distribution of water, and perform such other functions as may be assigned to him.  He shall have authority to make such reasonable regulations to secure the equal and fair distribution of water in accordance with the *determined rights as may be needed in his division.*  Such regulations shall not be inconsistent with the laws of the State."

The extent of the jurisdiction of the Board of Control or division superintendents depends upon the construction to be given to the words "determined rights" used in the above section.  In our opinion, this interpretation is to be found in sections 11 and 24 of the chapter cited.  Section 11 is as follows:

"Upon a petition to the Board of Control, signed by one or more water users upon any stream requesting the *determination of the relative rights* of the various claimants to the waters of that stream, it shall be the duty of the Board of Control, if, upon investigation, they find the facts and conditions are such as to justify, *to make a determination* of the said rights, fixing a time for beginning the taking of testimony and the making of such examination as will enable them to *determine the rights* of the various claimants.  In case suit is brought in the circuit court for the determination of rights to the use of water, the case may, in the discretion of the court, be transferred to the Board of Control for determination as in this act provided."

Section 24 provides that, "as soon as practicable after the compilation of said data, and the filing of said evidence, it shall be the duty of the Board of Control to make, and cause to be entered of record in its office, an order *determining* and *establishing* the several rights to the waters of said stream."  This determination is then to be entered in the records of the board, and is in full force and effect from the date of such entry, unless a stay bond is filed, as provided in the act.  A copy of the

order, together with the evidence, is filed in the circuit court, and a time is fixed by the circuit judge for the hearing of such determination; and, if no exceptions to the determination are filed within the time set for a hearing, the court enters a decree affirming the determination.

By the provisions of section 27, it is made the duty of the clerk of the circuit court to transmit a certified copy of the decree to the secretary of the Board of Control, and when the same is recorded the State Engineer, who is *ex officio* president of the board, is required to issue instructions to the superintendents of water divisions in compliance with the decree and in execution thereof. Section 36 is as follows:

"The Board of Control shall divide each water division into water districts, and said water districts to be so constituted as to secure the best protection to the claimants for water and the most economical supervision on the part of the State; said water districts shall not be created until a necessity therefor shall arise, but shall be created from time to time as the claims thereof from the streams of the State *shall be determined.*"

The succeeding section provides for the appointment of a water master, and among his other duties, as defined in section 38, he is given authority "to regulate the distribution of water among the various users under any partnership ditch or reservoir, *where rights have been determined, in accordance with existing* decrees." Section 63 provides that, when two or more persons are joint owners in an unincorporated ditch, and are unable to agree as to the distribution of the water from the same, they, or either of them, may apply to the water master to take charge for the purpose of distributing the water; that he may do so for the purpose of dividing the water in accordance with "established rights"; and that the users shall pay the expense of such services in accordance with the established rights of the parties.

1. Taking all these provisions together, we are of the opinion that the words "established rights," "determined rights," and "existing decrees," used in the act, refer only to such rights as are determined and established by the action of the Board of Control, pursuant to the act of 1909, and to decrees made under the provisions of the same act; and that for that reason the water master had no authority to act in the matters set forth in the complaint. The intent of the act seems to be to place the control of irrigating water under the jurisdiction of the Board of Control as rapidly as rights are determined by it, and become a matter of record in its office. When the board convenes to determine such rights, prior decrees, made independent of action by the board, are conclusive upon it as between the parties to such decrees, and thereafter the rights established thereby may be enforced by the water master, the same as though they had been originally determined by the board. But, in the absence of such determination in accordance with the water code, such rights must be enforced by the court making the decree.

2. Where the water master performs work at the direction of the division superintendent, as provided in section 42, he is not required to attach a copy of the order of his superior officer to his bill for services, as is required when the demand is made by water users.

3. The third cause of action stated is sufficient, and the demurrer should have been overruled.

The judgment of the circuit court is affirmed as to the first and second causes of action and reversed as to the third. Appellant will recover his costs in this court.

AFFIRMED IN PART: REVERSED IN PART.