Motions to dismiss appeals allowed March 5, argued on rehearing of
    motion to dismiss appeals July 17, appeals dismissed October 8,
    1918.

## IN RE WATERS OF CHEWAUCAN RIVER.

(171 Pac. 402; 175 Pac. 421.)

**Appeal and Error—Parties—Intervention on Appeal.**

1. The Supreme Court is a court of appellate jurisdiction only, and cannot admit interveners who were strangers to the proceeding below, as that would be an exercise of original jurisdiction.

**Appeal and Error—Notice of Appeal—Adverse Parties.**

2. Anyone whose rights may be injuriously affected by the modification of a decree is a party adverse to the one appealing, and should be served with notice of appeal.

**Appeal and Error—Notice of Appeal—Parties—Dismissal.**

3.  A proceeding was commenced before the board of control to determine the relative rights of the users of the water of a river, and on notice numerous users appeared and filed their claims and notices of contest, and after hearings, etc., the record was filed in the Circuit Court, and it entered a decree modifying the findings of the board, from the whole of which decree two of the parties appearing before the board and the Circuit Court separately appealed, but failed to serve notice of appeal upon all the parties appearing in the Circuit Court. Section 6650, L. O. L., as amended by Laws of 1913, page 161, provides that in such proceedings appeals from the decree may be taken to the Supreme Court the same as in other cases in equity, except that notice of appeal must be served and filed within 60 days from the entry of the decree, and Section 556 provides that upon an appeal from a decree the suit shall be tried upon the transcript and accompanying evidence. *Held* that, as the rights of all the parties were put in issue by the appeals, the failure to give notice of appeal to all who were parties below deprived the Supreme Court of jurisdiction of the subject matter.

**Appeal and Error—Appellate Jurisdiction—Notice of Appeal.**

4.  To give the Supreme Court jurisdiction, notice of appeal must be served upon every adverse party.

**Appeal and Error—Right of Appeal—Conditions.**

5.  The privilege of appeal is not inherent or constitutional, but exists only by virtue of the statute, and if the statute is burdensome in respect to notices of appeal, expenses, etc., it is not the province of the court to amend it or to dispense with its requirements, especially in view of Section 550, L. O. L., as amended by Laws of 1913, page 617, granting the privilege of giving oral notice of appeal in open court at rendition of final decree.

**Appeal and Error—Notice of Appeal—Contents.**

6.  A notice of appeal should contain enough in its terms to show that the party presenting the same is really a party to the record sought to be reversed or modified.

ON REHEARING.

**Appeal and Error—Right of Appeal—Statute.**

7.  No appeal exists as a matter of right, but must be founded on statute.

**Appeal and Error—Dismissal of Appeal—Policy of Court.**

8.  In view of the statute and rules of court which, where good faith is shown, provide for any amendment necessary to perfect appeal after notice of appeal and after Supreme Court has acquired jurisdiction, it is Supreme Court's policy to sustain rather than to dismiss an appeal.

**Appeal and Error—Notice of Appeal—Jurisdiction of Supreme Court —Statute.**

9.  The appellate court has no legal discretion over the service of the notice of appeal, and to give the Supreme Court jurisdiction on the merits there must be a strict compliance with Section 550,

L. O. L., as amended by Laws of 1913, page 617, providing for the service of notice of appeal.

Appearance—"General Appearance."

10. A "general appearance" must be express or implied from defendant's taking of some step in a cause beneficial to himself or detrimental to plaintiff other than one contesting the jurisdiction only, the purpose of which must bear some substantial relation to cause.

Appeal and Error—Notice of Appeal—"Party"—Statute.

11. Where all sections of water law were complied with, and, under Section 14, a claimant filed his statement, he became an actor, and appeared and submitted his water right to Circuit Court's jurisdiction for adjudication and to obtain his water right certificate, and was a party to proceeding entitled under Section 550, L. O. L., as amended by Laws of 1913, page 617, and in view of Section 6650 as amended by Laws of 1913, page 161, to notice of appeal.

Appeal and Error—Notice of Appeal—"Adverse Party."

12. Under Section 550, L. O. L., as amended by Laws of 1913, page 617, an "adverse party" entitled to notice of appeal is every party whose interest in relation to the judgment appealed from is in conflict with a modification or reversal sought by the appeal; every party interested in sustaining the judgment.

Appeal and Error—Notice of Appeal—"Adverse Party"—Statute.

13. Every claimant who filed his statement with water board in a proceeding under water law, and whose water right was adjudicated by decree of Circuit Court, is bound by that decree, though not excepting in Circuit Court, and is an adverse party within Section 550, L. O. L., as amended by Laws of 1913, page 617, entitled to a notice of appeal.

From Lake: BERNARD DALY, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

A proceeding was commenced before the board of control, under Sections 6635 et seq., L. O. L., to determine the relative rights of the users of the water of Chewaucan River in Lake County. Responding to the notice of the board issued by virtue of Section 6636, ninety-nine users of the water filed their claims before the board. Some thirty notices of contest were also filed before that body and after the hearings and examinations provided for by the statute the record thus made up by the board was filed in the Circuit Court of Lake County. A date for hearing the same was fixed

by the court and notice thereof was given to all the claimants who had appeared in the proceeding. After hearing the parties and taking further evidence the Circuit Court modified the findings of the board and entered a decree accordingly. From this decree and the whole thereof the Northwest Townsite Company and the Portland Irrigation Company, parties appearing both before the board and the Circuit Court, have separately appealed. Neither of them served its notice of appeal upon the other appellant nor on all of the individuals who appeared before the board and the Circuit Court. In fact, there are about seventy claimants and parties to the record in the Circuit Court upon whom no such notice has been served by anyone.

Some of the parties upon whom that paper was served have moved to dismiss the appeal on the ground that it was not served upon the other parties to the record before the Circuit Court named in the motion. Another ground of dismissal specified by another motion is that the notice does not contain the names of the parties to the suit and that there is nothing in the paper itself to show that the one promulgating it was a party to the proceeding at any stage. Separate motions were made on behalf of certain individuals who were not made parties to the proceeding at any stage and applied to this court for the first time for leave to intervene and dismiss the appeal of the Portland Irrigation Company on the ground that they had entered into contract with that concern to buy land included in a certain irrigation project and were induced to do so by sundry representations that ample water rights were appurtenant to the tracts which they had contracted to buy, but that said statements were untrue and amounted to fraud upon them. These matters appeared by affidavit filed in this court and

the affiants move to dismiss the appeal on the ground that the prolongation of the litigation involved would defer their settlement with the company with which they had contracted. We also have a brief emanating from the office of the Attorney General and that of the state desert land board, as *amici curiae,* resisting the motion to dismiss the appeals, contending that the award of water to the parties to this proceeding will materially interfere with proposed irrigation projects contemplated by the state authorities.

APPEALS DISMISSED.

*Messrs. Wood, Montague, Hunt & Cookingham,* for appellants, Northwest Townsite Company and Portland Irrigation Company.

*Mr. Alfred E. Reames,* for W. Y. Miller et al.

*Mr. W. Lair Thompson,* for Fred T. Elsey et al. and Chewaucan Land & Cattle Company.

*Mr. Conrad P. Olsen,* for J. T. Wenstrom et al.

*Mr. George M. Brown,* Attorney General, and *Mr. Percy A. Cupper,* Assistant Secretary State Desert Land Board, *Amici Curiae.*

BURNETT, J.—1. The motion of the interveners, who attack the Northwest Townsite Company and the Portland Irrigation Company for the first time in this court, in an effort to remove their appeals as an obstacle to their settlement with the latter concern, is not entitled to consideration here. This court is one of appellate jurisdiction only. It cannot

admit interveners, as that would be an exercise of original jurisdiction. If the parties concerned in this motion had desired to participate in the litigation it was their duty to apply at least to the Circuit Court, if not to the water board. Acting under Section 38, L. O. L., and to preserve the matter involved in the appeal over which it has jurisdiction, this court has in some instances substituted parties when the suit or action would otherwise abate by the death or other disability of a party or by transfer of some interest therein if the cause of action survived, but that is not like the case before us, where strangers intrude upon the litigation, not seeking to be substituted for any party thereto, but making a new attack upon one of the litigants.

The statement of the principle that this court is one of appellate jurisdiction only and that to admit strangers to participate in litigation here would be the exercise of original jurisdiction is sufficient to dismiss the motion of such parties from further consideration.

2, 3. The chief question to be decided is whether the failure to serve notice of appeal upon all the parties who appeared in the Circuit Court prevents the jurisdiction of this court attaching to the subject matter. It appears to be conceded by all parties that anyone whose rights may be injuriously affected by a modification of the decree is a party adverse to the one appealing and should be served with notice.

It is said in Section 6650, L. O. L., as amended by the act of February 21, 1913, Laws of 1913, Chapter 97, treating of this sort of procedure that:

"Appeals may be taken to the Supreme Court upon such decrees in the same manner and with the same effect as in other cases in equity, except that notice of

appeal must be served and filed within sixty days from the entry of the decree.''

It is also said in Section 556, L. O. L., that:

''Upon an appeal from a decree given in any court the suit shall be tried anew upon the transcript and evidence accompanying it.''

We note, also, that the appeal in each instance here is from the decree and the whole thereof, so that the entire determination of the Circuit Court is called in question. In other words, the adjustment of the relative rights of all the parties concerned before the trial court respecting the waters of the Chewaucan River is put at stake by the appeals. This necessarily involves the examination of the entire question and all the issues of the proceeding. The whole affair is subjected to readjustment, if we have jurisdiction of the same. The two parties appealing are dissatisfied with the settlement in the Circuit Court. They want more water or more favorable terms for the use of what they have. If successful, this means that the award to other parties will be disturbed in some measure. The enterprise of the Portland Irrigation Company, for instance, must be within irrigation limits of the stream. We will suppose that this appellant is successful in securing a modification of the decree, so that it will acquire more water. If such is the result it will *pro tanto* lessen the amount which will flow down the stream and be open to future appropriation, not only to those parties who are served with notice, but also by those who are not served and who already have or may hereafter obtain access to the stream. The fact that appropriations for certain tracts of land, as related to all others involved, have been established by the decree does not deprive their owners of the right

to make additional appropriations in the future, if water is there to be appropriated and can be applied to beneficial uses. This is true of both those below and those above any existing appropriator. Those below him are entitled to the water in excess of his appropriation; those above him are entitled, of course, to their original rights and also to appropriate water otherwise unappropriated, and not necessary to fill his quota.

If the presence of these parties was necessary for the exercise of the jurisdiction of the Circuit Court, it is none the less essential to the exercise of the limited appellate authority of this court. The reason is that the very essence of any decree in such litigation is the determination of the relative rights of the parties. This element of each right being relative to all others persists from the beginning to the end of such litigation, so that the plaint of one party must affect all others in a greater or less degree.

The uses to which water may be put are manifold and variable and fluctuate as much as the rise and fall of the stream itself, so that it is important at every stage of the proceeding for the court to have before it all whose rights attach to the thing submitted to the court for adjustment. This quality of variability was so apparent to the legislative power that it has provided in Section 6654, L. O. L., as follows:

"Within six months from the date of the decree of the Circuit Court determining the rights upon any stream, or if appealed within six months from the decision of the Supreme Court, the board of control, or any party interested, may apply to the Circuit Court for a rehearing upon grounds to be stated in the application. Thereupon, if in the discretion of the court it shall appear that there are good grounds for the rehearing, the Circuit Court, or judge thereof, shall

make an order fixing a time and place when such application shall be heard."

4, 5. This, however, does not alter the rule long established in respect to proceedings in this court, that in order to give it jurisdiction to act, the notice of appeal must be served upon every adverse party. It is contended that this involves such a great expense, owing to the large number of parties, that it practically destroys the right to appeal. This privilege, however, is not inherent nor constitutional. It exists only by virtue of the statute and if the application of the enactment is burdensome it is not the province of the courts to amend the same or to dispense with its requirements. The remedy must be found in the legislative branch of the government. Moreover, the Code, in Section 550, L. O. L., as amended by Chapter 319, Laws of 1913, grants the privilege of giving oral notice of appeal in open court at the rendition of final decree which certainly cannot be extraordinarily expensive.

6. Respecting the contents of the notice of appeal, it would seem that such a document should contain enough in its terms to show that the party presenting the same is really a party to the record sought to be reversed or modified. Otherwise, any stranger could intrude upon a proceeding without having any interest whatever in the same. It would more widely open the door to those who come before the court under the designation of *amici curiae,* when in reality they are bitter partisans or "Greeks bearing gifts." So far as the terms of the notices before us are concerned, they might have been given by the veriest strangers. It is sufficient for the purposes of this decision, however, to rest it upon the principle that the court has not ac-

quired jurisdiction because many of the adverse parties have not been served with notice of appeal.

The appeals must be dismissed.

                                        Appeals Dismissed.

Mr. Justice Bean concurs in the result.

Mr. Justice McCamant and Mr. Justice Benson took no part in the consideration of this case.

---

Appeals dismissed October 8, 1918.

## On Rehearing.

(175 Pac. 421.)

From Lake: Bernard Daly, Judge.

In Banc.

This proceeding is founded upon what is known as the water law of 1909, entitled, "An act providing a system for the regulation, control, distribution, use, and right to the use of water, and for the determination of existing rights thereto within the State of Oregon, providing penalties for its violation and appropriating money for the maintenance thereof." That law creates two water divisions, provides for one superintendent for each division and defines his duties. The act also provides for the appointment of a state engineer who, with the superintendents, shall constitute a board of control (now called the state water board), hereinafter referred to as the board, which shall have supervision of the waters of the state, and of the appropriation, distribution and diversion thereof.

"The decisions of said board shall be subject to appeal to the Circuit and Supreme Courts, which appeal

shall be governed by the practice in suits of equity, unless otherwise specified herein.''

Section 11 provides that upon a petition to the board filed by one or more water users of any stream, requesting the determination of the rights of the claimants to the waters thereof, it shall be the duty of the board, if it finds the facts justify, to make a determination of said rights, fixing the time for the taking of testimony and the making of such an examination as will enable it to determine the rights of the various claimants.

''Section 12. *Notice of Proceedings:* The board shall prepare a notice, setting forth the date when the engineer will begin an investigation of the flow of the stream and of the ditches diverting water therefrom, and a place and a time certain when the superintendent of the water division in which that stream is situated shall begin the taking of testimony as to the rights of the parties claiming water therefrom. Said notice shall be published in two issues of one or more newspapers having general circulation in the counties in which such stream is situated, the last publication of said notice to be at least thirty days prior to the beginning of taking testimony by said division superintendent, or for the measurement of the stream by the state engineer, or his assistant. The superintendent taking such testimony shall have the power to adjourn the taking of testimony from time to time and from place to place, to suit the convenience of those interested.''

''Section 13. *Notice to Claimants:* It shall be the duty of said division superintendent to send by registered mail to each person, firm or corporation, hereinafter to be designated as claimant, claiming the right to the use of any of the waters of said stream, and to each person, firm or corporation owning or being in possession of lands bordering on and having access to said stream or its tributaries, in so far as such claimants and owners and persons in possession can reasonably be ascertained, a similar notice setting forth the

date when the state engineer or his assistant will begin the examination of the stream and the ditches diverting the waters therefrom, and also the date when the super-intendent will take testimony as to the rights to the water of said stream. Said notice must be mailed at least thirty (30) days prior to the date set therein for making the examination of the stream or the taking of such testimony."

"Section 14. *Statement of Claimant:* The division superintendent shall, in addition, inclose with said notice a blank form on which said claimant or owner shall present in writing all the particulars necessary for the determination of his right to the waters of the stream to which he lays claim, the said statement to in-clude the following:

"The name and postoffice address of the claimant.

"The nature of the right or use on which the claim is based.

"The time of initiation of such right or the com-mencement of such use, and if distributing works are required.

"The date of beginning of construction.

"The date when completed.

"The date of beginning and completion of enlarge-ments.

"The dimensions of the ditch as originally con-structed and as enlarged.

"The date when water was first used for irrigation or other beneficial purposes, and if used for irrigation, the amount of land reclaimed the first year, the amount in subsequent years, with the dates of reclamation, and the amount and general location of the land such ditch is intended to irrigate.

"The character of the soil and the kind of crops cultivated, and such other facts as will show a compli-ance with the law in acquiring the right."

Under Section 15 the claimant is required to verify his "statement," for which blanks shall be furnished, and the superintendent is authorized to administer the oath. Under Section 16, upon the date specified in the

notice, the division superintendent shall begin the taking of such testimony and shall continue until completed. Section 17 provides that the claimants shall pay certain fees, and for an additional fee of so much per acre for each acre of irrigated land.

"Section 18. *Notice upon Completion of Testimony:* Upon the completion of the taking of testimony by the division superintendent, it shall be his duty at once to give notice by registered mail to the various claimants that at a time and place named in the notice not less than ten days thereafter, all of said evidence shall be open to inspection of the various claimants or owners, and said superintendent shall keep said evidence open to inspection at said places not less than ten days, and such other time as fixed in the notice. Said superintendent shall also state in said notice the county in which the determination of the board of control will be heard by the Circuit Court; *provided,* that said cause shall be heard in the county in which said stream or some part thereof is situate."

"Section 19. *Contests:* Should any person, corporation or persons owning any irrigation works, or claiming any interest in the stream or streams involved in the determination, desire to contest any of the rights of the persons, corporations or associations who have submitted their evidence to the superintendent as aforesaid, such persons, corporations or associations, shall within five days after the expiration of the period as fixed in the notice for public inspection, notify the superintendent in writing, stating with reasonable certainty the grounds of their proposed contest, which statement shall be verified by the affidavit of the contestant, his agent or attorney, and the said division superintendent shall notify the said contestant and the person, corporation or association, whose rights are contested, to appear before him at such convenient place as the superintendent shall designate in said notice."

Sections 20 and 21 provide for the filing of contests before the board, notices thereof and hearings thereon.

"Section 22. *Evidence Transmitted:* Upon the expiration of the period for which the evidence is kept open for inspection, the evidence in the original hearing before the superintendent, and the evidence taken in all contests, shall be transmitted by the superintendent to the office of the board of control in person, or by registered mail. Such evidence shall thereupon be filed with the board."

Section 23 makes it the duty of the state engineer or his assistants, at the time specified in the notice therefor, to make an examination of the stream and the works diverting water therefrom, which shall include the measurement of the discharge of said stream, of the carrying capacity of the various ditches and canals, an examination of the irrigated lands, and "to take such other steps and gather such other information and data as may be essential to a proper understanding of the relative rights of the parties interested," all of which shall be reduced to writing; and to make a map or plat showing the location of each ditch or canal and the legal subdivisions of the lands irrigated or which are susceptible of irrigation.

"Section 24. *Order Determining Water Rights:* As soon as practicable after the compilation of said data, and the filing of said evidence, it shall be the duty of the board of control to make, and cause to be entered of record in its office, an order determining and establishing the several rights to the waters of said stream. As soon as practicable thereafter a certified copy of said determination shall be filed in the office of the county clerk of each county in which said stream, or any part thereof or any tributary, is situated, and the original evidence filed with the board of control shall be certified by the clerk of the board and, together with a certified copy of said determination, shall be filed with the clerk of the Circuit Court by which court such determination is to be heard. The determination of the board shall be in full force and effect from the

date of its entry in the records of the board, unless and until its operation shall be stayed by a stay bond as provided for by this act.   Upon the filing of the evidence with the Circuit Court of the county in which the determination is to be had, the board shall procure an order from said Circuit Court, or any judge thereof, fixing the time at which the determination shall be heard in said court.   Copies of this order, certified by the clerk of said court, shall be filed by the board as soon as practicable in the office of the county clerk of each county in which said determination is filed.''

"Section 25. *Water Right Certificate:* Upon the final determination of the rights to the waters of any stream, it shall be the duty of the secretary of the board of control to issue to each person, association or corporation represented in such determination, a certificate to be signed by the president of the board of control, and attested under seal by the secretary of said board, setting forth the name and postoffice address of the owner of the right; the priority of the date, extent and purpose of such right; and if such water be for irrigation purposes, a description of the legal subdivisions of land to which said water is appurtenant.   Such certificate shall be transmitted by the president, or other member of the board of control, in person or by registered mail, to the county clerk of the county in which such right is located, and it shall be the duty of the county clerk upon receipt of the recording fee of  one dollar collected as hereinbefore provided, to record  the  same  in  a  book  especially prepared and kept for that purpose, and thereupon immediately transmit the certificates to the respective owners.''

"Section 26. *Court Procedure:* From and after the filing of the evidence and order of determination in the Circuit Court, the proceedings shall be as nearly as may be like those in a suit in equity, except that any proceedings, including the entry of a decree, may be had in vacation with the same force and effect as in term time.   Within thirty days from the filing of such evidence and order in the Circuit Court, or within such further time as the court may for good cause allow,

any party may file exceptions to the determination. If no exceptions shall be filed, the court shall on the day set for hearing enter a decree affirming the determination of the board.

"All parties may be heard by counsel upon the consideration of the exceptions. The court may, if necessary, remand the case for such further evidence to be taken by the superintendent of the water division as it may direct, and may require a further determination by the board. After the hearing, the court shall enter a decree affirming or modifying the order of the board of control. Upon the hearing, the court may assess and adjudge against any party such costs as it may deem just. Appeals may be taken to the Supreme Court from such decrees in the same manner and with the same effect as in other cases in equity, except that notice of appeal must be served and filed within sixty days from the entry of the decree."

"Section 27. *Clerk Shall Transmit Transcript to Clerk of Board:* The clerk of the Circuit Court, immediately upon the entry of any decree by the Circuit Court or by the judge thereof, shall transmit a certified copy of said decree to the secretary of the board of control. The secretary shall immediately enter the same upon the records of such office and the state engineer shall forthwith issue to the superintendent or superintendents of water divisions instructions in compliance with the said decree, and in execution thereof."

"Section 28. *Distribution:* During the time the hearing of the order of the board of control is pending in the Circuit Court, and until a certified copy of the judgment, order or decree of the Circuit Court is transmitted to the board of control, the division of water from the stream involved in such appeal shall be made in accordance with the order of the board."

Section 29 provides that after the determination of the board the operation thereof may be stayed by the order of any judge of the Circuit Court upon the filing of an approved bond.

Section 30 provides that within six months from the date of the decree of the Circuit Court, or if appealed, within six months from the decision of the Supreme Court, any interested party may apply to the Circuit Court for a rehearing upon grounds to be specified in the application.

"Section 33. *Conclusive, When:* The determination of the board of control as confirmed or modified as provided by this act in proceedings shall be conclusive as to all prior rights, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."

"Section 34. *Duty of Water Right Claimants:* Whenever proceedings shall be instituted for the determination of the rights to the use of any water, it shall be the duty of all claimants interested therein to appear and submit proof of their respective claims, at the time and in the manner required by law; and any such claimant who shall fail to appear in such proceedings and submit proof of his claims shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other body of water embraced in such proceedings, and shall be held to have forfeited all rights to the use of said water theretofore claimed by him. * * *"

Based upon a petition as provided for in Section 11, the board undertook to adjudicate the water rights of Chewaucan River in Lake County. The record shows a literal compliance with both the spirit and intent of the water law and that pursuant to notice, under Section 14, eighty-nine claimants made and filed one hundred and sixty proofs of claim of their respective water rights in and to the waters of the stream. After the filing of the "statements," the taking of a large amount of testimony and the hearing of a number of contests, the board made its order "determining and establishing the several rights to the waters of the said stream," as provided by Section 24, and thereafter filed certified

copies of the evidence taken and of its findings with the clerk of the Circuit Court for Lake County, and procured an order from that court fixing May 15, 1916, as the date for the hearing on the determination in said court. Notices of the time and place of such hearing were duly given and under Section 26, twenty-five different claimants made and filed in the Circuit Court nineteen different exceptions to the findings of the board. On application the court made an order extending the time for the hearing on such exceptions until August 28, 1916, when the parties who made such exceptions appeared in court by their respective attorneys. The court also made an order for the taking of additional testimony and by consent of all parties who filed such exceptions the court, with their attorneys, made an inspection of the waters of said stream and its various tributaries, ditches and canals. After the taking of such additional testimony as was then offered the court, on December 2, 1916, made and filed findings of fact in and by which it materially modified many of the findings of the board, and made and rendered a decree upon the findings as modified, adjudicating the water rights of the stream among the different claimants and defining their respective interests.

The board allowed one cubic foot of water per second to each 40 acres of land; the Circuit Court allowed one cubic foot to each 25 acres. The board did not make any findings as to the volume of water which should be used upon an acre of land during the irrigating season, but the court found that the claimants were entitled to amounts ranging from 3.9 to 4.8 acre-feet to be used on each acre of land during each irrigation season. As to the irrigating period there is a material difference between the findings of the board and those of the Circuit Court.

In its "statement" filed with the board the Portland Irrigation Company, one of the appellants, claims that it is the owner of 12,037 acres of land and the right to the use of 15,000 inches of water under six-inch pressure; that such right was initiated September 30, 1905, and that 375 cubic feet of water per second continuous flow and 42,800 acre-feet storage are necessary for the proper irrigation of its lands. The board found that it had never used any water whatever for irrigation purposes, but that it did have an inchoate right, conditional upon the application of such waters to a future beneficial use. The court found that it did not have any water right whatever.

The Northwest Townsite Company, the other appellant, under Proof 129, as of the year 1881, claimed ½ cubic foot of water per second; under Proof 130, as of 1885, 2 cubic feet per second; under Proof 131, as of 1886, ½ cubic foot per second for irrigation purposes and 30 cubic feet per second all of the time for power purposes; under Proof 132, as of June 11, 1897, 11.75 cubic feet per second for irrigation purposes. The board allowed .43 cubic foot under Proof 129, 2 cubic feet under Proof 130, .17 cubic foot under Proof 131 and 30 cubic feet all of the time for power purposes, and under Proof 132, 4 cubic feet. The court found that at no time prior to 1913 were more than 160 acres of land irrigated through the Conn ditch; that any additional land irrigated through that ditch since 1913 was by permit issued by the state engineer in 1912 for the enlargement thereof, and that the water used for power purposes should be returned to the stream "without substantial diminution in quantity," and also made other material changes in the findings of the board.

After the decree was rendered in the Circuit Court and within the sixty days, the Northwest Townsite Company and the Portland Irrigation Company undertook to appeal, and maintained that they served the notice of appeal upon any and all of the claimants who filed exceptions in the Circuit Court. But it is conceded and the record shows that the notice of appeal was not served upon any claimants who did not file exceptions in the Circuit Court. Based upon affidavits, motions to dismiss the appeal were duly filed by a number of the claimants for the reason that any and all of the persons who made and filed with the board "statements" or proofs of claim of their water rights had appeared in and were bound by the decree of the Circuit Court and were adverse parties to the appellants and that each of such claimants should have been served with the notice of appeal. The motions were submitted to this court on typewritten briefs and were sustained in an opinion by Mr. Justice Burnett, *ante,* p. 659 (171 Pac. 402), and the appeals were dismissed. Appellants' counsel then filed a very able and vigorous petition for a rehearing, which was granted. Printed briefs were then filed by opposing counsel and an oral argument was made before this court sitting *in banc.*

The question is squarely presented as to whether claimants who filed their "statement" or proof of claim with the board and who did not file exceptions in the Circuit Court are adverse parties to the appellants and whether the facts shown by the record constitute such an appearance by such claimants in the Circuit Court as to entitle them to be served with a notice of appeal.    Appeals Dismissed.

*Mr. W. Lair Thompson, Mr. Evan Reames* and *Mr. Walter Rothchilds,* for the motion.

*Mr. C. E. S. Wood* and *Mr. Lionel R. Webster,*
*contra.*

JOHNS, J.—7–9. No appeal exists as a matter of
right. It must be founded upon a statute. After the
notice of appeal has been served and this court has ac-
quired jurisdiction, both the statute and the rules of this
court, where good faith is shown, provide for any
amendment or correction which may be necessary to
perfect the appeal. On such a showing and under
such provisions it has always been the policy of this
court to sustain rather than to dismiss an appeal, but
it is by and through service of the notice of appeal,
and service only, that this court acquires jurisdiction,
and the statute specifically points out and defines how
a notice of appeal should be served, when served and
upon whom it should be served, and all the authorities
hold that the appellate court does not have any legal
discretion over the service of the notice of appeal,
and that to give this court jurisdiction to hear and de-
termine a case on the merits there must be a strict com-
pliance with any and all of the terms and provisions of
the statute.

Among other things, Section 550, L. O. L., as
amended, provides:

"The party desiring to appeal may cause a notice,
signed by himself or attorney, to be served on such
adverse party or parties as have appeared in the action
or suit, or upon his or their attorney, at any place in
the state, and file the original, with proof of service
indorsed thereon, with the clerk of the court in which
the judgment, decree or order is entered,"

and Section 6650, L. O. L., as amended by the Laws of
1913, provides that:

"Appeals may be taken to the Supreme Court from
such decrees in the same manner and with the same

effect as in other cases in equity, except that notice of appeal must be served and filed within sixty days from the entry of the decree.''

10. Hence the question is presented: First, who did appear in the Circuit Court? And, second, who are adverse parties?

''A general appearance must be express or arise by implication from the defendant's seeking, taking or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting the jurisdiction only. The purpose of this appearance, however, must bear some substantial relation to the cause. In other words, it must be a purpose within the cause, not merely collateral thereto. As to what constitutes a general appearance conferring jurisdiction over the person, the test according to a late decision of the Federal Supreme Court is whether the defendant became an actor in the cause'': 2 R. C. L., p. 327, § 7.

In the case of *Merchants' Heat & Light Co.* v. *J. B. Clow & Sons*, 204 U. S. 283, 290 (51 L. Ed. 488, 27 Sup. Ct. Rep. 285), it is said:

''There is some difference in the decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in a proper sense he submits.''

11. When an individual having a water right receives the notice specified in Section 12 of the water law of 1909 and does not make and file his ''statement'' as provided in Section 14, he knows as a matter of law that he is in default and that he will lose his water right, as provided in Section 34. But when one having a water right receives the notice specified in Section 12, makes and files his statement of claim as provided in Section 14 and pays the fees required, he knows as a matter of law that the board will investigate his water

right and that under Section 24, as soon as practicable after such investigation, it will make an order determining his water right and file a certified copy of its findings in the office of the county clerk of the county in which his water right is located, and that in and by subsequent proceedings, as provided for in Section 26, the Circuit Court of that county will make an order approving or modifying such findings, and based thereon will render a decree finally adjudicating his water right; that under Section 25 he will then receive his water right certificate under the seal of the board, which shall set forth his name and postoffice address, the priority of the date, the extent and purpose of his water right, and a description of the land to which it is appurtenant, and that such certificate is entitled to public record. And he knows that Section 33 provides that:

"The determinations of the board of control as confirmed or modified as provided by this act in proceedings shall be conclusive as to all prior rights, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."

His water right is then adjudicated by a solemn decree of the Circuit Court and the evidence of that right which formerly existed in parol then becomes and is perpetuated by a public record. It was for the purpose of having his water right adjudicated and perpetuated in a public record and to obtain such a certificate and public record that he filed his "statement" or proof of claim under Section 14 and paid the fees which the statute requires.

In *Pacific Livestock Co.* v. *Cochran,* 73 Or. 417, 428 (144 Pac. 668), this court, speaking through Mr. Chief Justice McBRIDE, said:

"It is evident that a failure by the claimant of a water right to appear and submit his claims when properly required to do so bars his right to assert it thereafter to the same extent that a party is barred who makes default after service of summons in a proceeding at law. * * A determination of the water rights to a stream finally ends as a report to the Circuit Court, and a decree of final determination by that court."

If a party who fails to make and file his "statement" as provided for in Section 14 is barred and loses his right, it must follow that anyone who does make and file his proof of claim as required by that section is not barred and does not lose his right, and that in the making and filing of such "statement" and the payment of the required fees and in the subsequent proceedings of the board and the Circuit Court, he then and thereby submits himself and the adjudication of his water right to the jurisdiction of the Circuit Court. How can any claimant who failed to appear and file his proof of claim be barred of his water right unless it is a judicial proceeding? How can the determination of the board as confirmed or modified by the. Circuit Court be conclusive as to all prior rights and the rights of all existing claimants upon the stream, unless the board and the Circuit Court have jurisdiction of the claimants and their respective rights?

Under Section 14 the claimant makes and files a written statement of all of the particulars necessary for the determination of his water right: First, of his name and postoffice address; second, the nature of the right and use on which his claim is based; third, the initiation of his right; fourth, the date when he commenced construction; fifth, the date when completed; sixth, the commencement or completion of any enlargement; seventh, the dimensions of the ditch as originally constructed and enlarged; eighth, the date when he first

used water for irrigation or other beneficial purposes, and the amount of land irrigated for the first and subsequent years and the location of his land; ninth, the character of the soil, the kind of crops, and any other facts showing how he acquired his water right. This constitutes his formal complaint, upon which the board makes its investigation and findings, which are modified or approved by the Circuit Court and upon which its decree is rendered. Up to and including the findings of the board, our water law is almost a literal copy of that of the State of Wyoming. But thereafter there is this difference between the two: the Wyoming statute provides for an appeal from the findings of the water board to the District Court and our statute provides for the filing of the findings of the board in the office of the clerk of the Circuit Court, and based on subsequent proceedings, after notice thereof, the Circuit Court shall then approve or modify the findings and render a decree thereon. In an exhaustive opinion in the case of *Farm Investment Co.* v. *Carpenter,* 9 Wyo. 110, 147 (61 Pac. 258, 87 Am. St. Rep. 918, 50 L. R. A. 747), the Supreme Court of that state held:

"It may be assumed that, in the absence of fraud or collusion, any matter actually and legally determined by the final decree of the board becomes *res judicata,* at least as to the public, and the parties participating in the proceedings."

If the findings of the board, from which the right of appeal exists, are *res judicata* under the Wyoming statute, *a fortiori* they should be *res judicata* under our statute, which requires them to be filed in, and approved by, the Circuit Court.

Our water law has been construed, its validity and constitutionality assailed, and was upheld in *Wattles* v. *Baker County,* 59 Or. 255 (117 Pac. 417); *Pringle Falls Power Co.* v. *Patterson,* 65 Or. 474, 484 (128 Pac.

820, 132 Pac. 527); *Claypool* v. *O'Neill*, 65 Or. 511 (133 Pac. 349); *Pacific Livestock Co.* v. *Cochran*, 73 Or. 417 (144 Pac. 668); *In re Willow Creek*, 74 Or. 592 (144 Pac. 505, 146 Pac. 475); *In re North Powder River*, 75 Or. 83 (144 Pac. 485, 146 Pac. 475), and in the case of *Pacific Livestock Co.* v. *Oregon Water Board*, 241 U. S. 440 (60 L. Ed. 1084, 36 Sup. Ct. Rep. 637), in which the opinion was written by Mr. Justice VAN DEVANTER. That jurist, prior to his appointment to the Supreme Court of the United States was a resident and Chief Justice of Wyoming, after that state enacted its water law. On pages 448, 451 and 453 of 241 U. S., the opinion says:

"It is intended to be universal and to result in a complete ascertainment of all existing rights, to the end: First, that the waters may be distributed, under public supervision, among the lawful claimants according to their respective rights without needless waste or controversy; Second, that the rights of all may be evidenced by appropriate certificates and public records, always readily accessible, and may not be dependent upon the testimony of witnesses with its recognized infirmities and uncertainties. * * All the evidence laid before it goes before the court, where it is to be accorded its proper weight and value. That the state, consistently with due process of law, may thus commit the preliminary proceedings to the board and the final hearing and adjudication to the court is not debatable. * * The statute discloses a fixed purpose to secure timely notice to all claimants of each material step in the proceeding and full opportunity to be heard in respect of all that bears upon the validity, extent and priority of their claims."

In the case of *In re Willow Creek*, 74 Or. 592 (144 Pac. 505), on page 611 of the report (page 512 of 144 Pac.), this court says:

"The findings of the board are advisory rather than authoritative. It is only when the courts of the state

have obtained jurisdiction of the subject matter and of the persons interested, and rendered a decree in the matter determining such rights that, strictly speaking, an adjudication or final determination is made,''

and in *Pacific Livestock Co.* v. *Cochran,* 73 Or. 417 (144 Pac. 668), on page 429 of the report (page 672 of 144 Pac.) it is said:

''A determination of the water rights to a stream finally ends as a report to the Circuit Court and a decree of final determination by that court.''

We hold that when all other sections of the law have been complied with and under Section 14 the claimant has made and filed his ''statement'' or proof of claim, he then becomes an actor and submits himself and his water right to the jurisdiction of the court, and thereby appears in court for the purpose of having his water right adjudicated and to obtain his water right certificate, and that any such a claimant has appeared in and is a party to the proceeding within the meaning of Section 550 of the Code.

12. Second, who are adverse parties? In *Thompson* v. *Ellsworth,* 1 Barb. Ch. (N. Y.) 627, the court said:

''The adverse party * * means the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal.''

That decision is approved and followed by Mr. Justice Sanderson in the case of *Senter* v. *De Bernal,* 38 Cal. 641, where it is said:

''Our Code allows any and every party who is aggrieved to appeal without joining anyone else, no matter what may be the character of the judgment against him, whether joint or several; and, in this respect, works a change from the former practice, but he is required to notify all other parties who are interested in opposing the relief which he seeks by his appeal,

if they have formally appeared in the action in the court below, or his appeal, as to those not served, will prove ineffectual, and also as to those served, if the relief sought is of such a character that it cannot be granted as to the latter without being granted as to the former also.''

And that case is approved by this court in *The Victorian*, 24 Or. 121, 128 (32 Pac. 1040, 41 Am. St. Rep. 838). In *Moody* v. *Miller*, 24 Or. 179 (33 Pac. 402), this court said:

''The statute has not abrogated the common-law rule requiring all persons whose interests would be affected by the reversal or modification of the decree to be made parties to the appeal, and to be brought into court.''

This was approved in *Osborn* v. *Logus*, 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997):

''An 'adverse party' entitled to notice of appeal is every party whose interest in relation to the judgment and decree appealed from is in conflict with the modification or reversal sought by the appeal; every party interested in sustaining the judgment or decree'': 1 Words & Phrases, 224, and authorities there cited.

On legal principle the case of *Hamilton* v. *Blair*, 23 Or. 64–66 (31 Pac. 197), is very similar to the instant case. This court there said:

''As in suits in equity, the case must be tried anew in the appellate tribunal, any change or any modification or any reversal of the decree by this court would necessarily have the effect to disturb or to destroy the ratable proportion established by it to be distributed among the depositors and render a new division necessary. It would follow that all the depositors who were parties to the suit in the trial court would have a substantial interest to be affected by such decree of the appellate tribunal as to render their presence necessary.''

In the case of *In re Silvies River,* 199 Fed. 495, 503, Mr. Justice Bean says:

"The water is the *res* or subject matter of the controversy.   It is to be divided among the several claimants according to their respective rights.   Each claimant is therefore directly and vitally interested, not only in establishing the validity and extent of his own claim, but in having determined all of the other claims.   The proceeding is essentially a suit for the partition of the waters of the stream among the respective owners.  * * It is a case where divers and sundry parties are entitled to use so much of the waters of a stream as they have put to beneficial use and the purpose is to ascertain their respective rights by a simple, economical, effective, and comprehensive proceeding, and is not a separable controversy between different claimants."

In this proceeding the waters of the Chewaucan River are the subject matter, and the persons who filed their "statements" as provided by Section 14 are the claimants of such waters and the parties in interest.   The record shows a compliance with any and all of the provisions of the water law of 1909, and that law says that the decree of the Circuit Court is conclusive as to any and all such rights adjudicated between the claimants upon the stream.

The board found that each claimant was entitled to one cubic foot of water per second to each 40 acres of land; the Circuit Court modified that finding and allowed the claimants one cubic foot of water to each 25 acres.   The amount of water per acre to be used by each claimant is very vital and important.   In its "statement," the Portland Irrigation Company claimed the right to the use of 375 cubic feet of water per second to irrigate 12,037 acres of land, averring that such right was initiated September 30, 1905.   The Northwest Townsite Company in its "statement" claimed, together with 30 cubic feet of water per sec-

ond all of the time for power purposes, the right to sufficient water to irrigate 633 acres of land, giving the date of June 11, 1897, as the time when its last water right was initiated. It appears from the findings of the board and the decree of the Circuit Court that there were at least eight different claimants who did not file exceptions in the Circuit Court, but did file their ''statements'' with the board, claiming water rights initiated after September 30, 1905, which is the date of priority claimed by the Portland Irrigation Company, and their respective claims were sustained by the board, approved by the Circuit Court and made a part of the decree. It also appears from the findings of the board and the decree that there were at least twenty-three different claimants who did not file exceptions in the Circuit Court but who filed their ''statements'' claiming water rights initiated after June 11, 1897, the latest date on which the Northwest Townsite Company claimed a water right, and that the proofs of all such claimants were allowed, approved and became a part of the decree. Hence it must follow that as to such claimants there is a conflict as to priorities between them and the appellants.

The duty and volume of water per acre to be used are also in dispute. The board allowed one cubic foot of water per second for each 40 acres of land, and the decree awarded one cubic foot of water per second for each 25 acres. That finding is of vital importance to every claimant. There is a material difference between the findings of the board and the decree of the court as to the period of the irrigating season, which varies with the character and location of the claim. The point of diversion is also important.

If the notice of appeal were legally served and this court had jurisdiction, the case would then be tried

*de novo* upon its merits, and it would be not only the province of this court, but its duty also, to settle and determine from the record the priorities as between any and all claimants, the use of water per cubic foot, the volume per acre, the point of diversion, and how and when it should be used, all of which matters are very vital and material to every claimant, and as to every one of which there is a conflict between the findings of the board and the decree of the Circuit Court, and over which there would be strife and a contest in this court. The whole purpose and intent of the water law was to provide a plain and effective method by which any and all persons having or claiming a right to the use of the waters of a particular stream were to be brought into and before the Circuit Court and after investigation of the respective rights of each and every claimant the court should then and there render a decree which would forever settle and define not only the rights of each claimant, but settle and define the water rights of all claimants as between each other, and that was the legal force and effect of the decree of the lower court from which the appeal is taken. The purpose of the appeal is to have this court make other and different findings as to the priorities of all rights as between the claimants, the duty of water, the volume per acre, the point of diversion and place of use, and the period of the irrigating season, and to render a decree which will be more favorable to the appellants as to their respective water rights.

It appears from the record that 89 claimants filed 160 "statements" under Section 14; that only two of such claimants have sought to appeal from the decree; that the Portland Irrigation Company, one of the appellants, claims the right to the use of 375 cubic feet of water, contending that such right was initiated Sep-

89 Or.—44

tember 30, 1905, and yet it appears from both the findings of the board and those of the Circuit Court that at the time they were made, in 1912, the Portland Irrigation Company had never used any water at any time or for any purpose whatever. It also appears from the findings and the decree of the Circuit Court that the Northwest Townsite Company was allowed one cubic foot of water per second for each 25 acres of its land which had actually been irrigated, and that the allowance was made on the same basis for all other claimants.

13. We are of the opinion that every claimant who filed his "statement" with the board and whose water right was adjudicated by the decree of the Circuit Court is bound by that decree and is an adverse party within the meaning of Section 550, L. O. L. Under the provisions of that section, a notice of appeal may be given in open court, and it was enacted to provide a simple and effective method of serving such notice and to apply to this particular kind of a case. If, as appellants' counsel claim, they were not advised by the court as to when the decree was rendered, and therefore were denied the right to appeal by giving notice in open court, the remedy is with the legislature.

The appeals are dismissed.    Dismissed.

The late Mr. Justice Moore took no part in the hearing or consideration of this case.