(No. 2150—

DEALERS' TRANSPORT COMPANY, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 9, 1935.*

BERNARD YEDOR, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

From the stipulation of facts herein it appears that prior to and on the 1st day of January, A. D. 1931, the claimant was engaged in the business of transporting motor vehicles by truck from factory to dealer; that its tractors and semi-trailers were sixty (60) feet in length; that on said date the law permitted the use of motor vehicles and trailers not to exceed sixty-five (65) feet in length; that the Legislature by an enactment adopted July 1, 1931, approved July 8, 1931, amended Section three (3) of the Motor Vehicle Act so as to provide that the length of any single vehicle, or combination of tractor and semi-trailer shall not exceed thirty-five (35) feet; that on the 21st day of July, 1931, an injunction was issued out of the United States District Court for the Eastern District of Illinois restraining the enforcement of said amendment; that the Legislature by an enactment adopted July 8, 1931, effective January 1, 1932, amended Section nine (9) of the Motor Vehicle Act so as to provide that vehicles and tractors with one semi-trailer each, having a gross weight of more than 16,000 pounds and not more than 20,000 pounds, including the weight of the vehicles and maximum load, shall pay a license fee of One Hundred Ten Dollars ($110.00); that claimant applied for two (2) sets of license plates on April 16, 1932; two (2) sets on April 26,

1932; and two (2) sets on May 9, 1932, in all six (6) sets, and paid therefor the sum of $110.00 per set, to-wit, a total of Six Hundred Sixty Dollars ($660.00); that on July 1, 1932, the aforementioned injunction was dissolved; that upon the dissolution of such injunction, claimant withdrew its said vehicles from the highway and did not thereafter use the same; that on November 22, 1932, claimant returned the aforementioned six sets of license plates to the Secretary of State.

Claimant asks for a refund of $330.00, being that portion of the license fees paid by it for the period from July 1, 1932, to December 31, 1932, together with interest on such amount from July 1, 1932, at five per cent (5%) and bases its right to an award upon the following propositions advanced by it:

1) "The unearned portion of the money paid for a license may be recovered by the licensee, where the license has become inoperative by acts or circumstances over which he has no control and without his volition as where he is deprived of his license by a Statute or ordinance which prohibits the occupation for which the license was obtained."

2) "Where a license fee or tax illegally or unlawfully assessed has been involuntarily paid, the illegal or unlawful excess may be recovered. License taxes are not voluntarily paid within the rule that precludes a recovery even if illegally exacted where the failure to pay is a penal offense and payment is made to avoid proceedings to enforce the penalty."

3) "The Court of Claims has power to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, *ex contractu* and *ex delicto*, which the State, as a sovereign commonwealth, should, in equity and good conscience discharge and pay."

In support of its first proposition claimant has cited a large number of cases from other states, all of which are cases in which licenses were issued for the sale of intoxicating liquor, and in which the licensee's right to operate under such license was thereafter terminated through no act or fault on his part; as the result of which he was deprived of the unearned portion of the license fee. All of such cases are readily distinguishable on the facts from the present case.

In this case the license fees in question were paid in April and May, 1932, and were for the use of the public highways of this State during the calendar year 1932 by three tractors and semi-trailers, each having a gross weight of more than 16,000 pounds and not more than 20,000 pounds.

It must be borne in mind that the licenses in question were for the operation of vehicles of certain gross weights;

that the license fee was fixed by the gross weight of the vehicle and load; and that the length of the vehicle had no bearing whatsoever on the amount of the license fee or upon the issuance of the license. The length of the vehicle was limited by another statutory provision, which, however, had no connection with the issuance of the license, or the license fee, such fee being based entirely upon the gross weight of the vehicle and load.

There was nothing done by the respondent after the issuance of such licenses which limited in any way the right of the claimant thereunder. Its rights were fixed and determined at the time it paid such license fees, and there was no revocation or limitation of such rights thereafter. Under such licenses claimant retained the right, at all times during the year 1932, to use the public highways for three vehicles consisting of a tractor and semi-trailer having a gross weight of more than 16,000 pounds and not more than 20,000 pounds.

Claimant seems to assume that prior to the dissolution of the injunction on July 1, 1932, it had a *right* to operate vehicles sixty (60) feet in length, and that such *right* was taken away by the dissolution of the injunction. Claimant's *rights* were determined by the law adopted July 8, 1931, effective January 1, 1932; and such *rights* were the same prior to the dissolution of the injunction as they were thereafter. The ability of the State to enforce such law and collect the penalties provided for the violation thereof, was suspended during the pendency of the injunction proceedings, but the *rights* of the claimant thereunder remained the same at all times after the law became effective.

There is no analogy whatsoever between this case and the cases cited by claimant in which a license was issued to the licensee for the purpose of engaging in the liquor business within a certain territory and where the licensee was thereafter forced to discontinue his business on account of some act on the part of the licensing authorities, or an account of the fact that the territory thereafter became "dry" territory.

As to claimant's second contention that the license fee was illegal or unlawfully assessed and has been involuntarily paid and that he is therefore entitled to recover the same,

we are forced to the conclusion that the fee was neither illegal nor unlawfully assessed, nor was it involuntarily paid.

The Statute fixing the amount of the tax was adopted on July 1, 1931, and became effective on January 1, 1932. Claimant and others who obtained the restraining order from the District Court of the United States apparently contended in that court that the law was unconstitutional, but the action of the District Court in subsequently dissolving the injunction disposes of that contention.

On the question as to whether the tax was paid voluntarily or under compulsion or duress, claimant takes the position that the payment was made for the purpose of avoiding a penalty to which it would otherwise be subject and must therefore be considered involuntary. In support of this contention claimant has cited the following cases from Illinois, to-wit: *City of Chicago* vs. *Klinkert,* 94 Ill. App. 524; *City of Chicago* vs. *Waukesha Brewing Co.,* 97 Ill. App. 553; *City of Chicago* vs. *Northwestern Mutual Ins. Co.,* 218 Ill. 40; *Cook County* vs. *Fairbank,* 222 Ill. 578.

The Klinkert case was a suit in assumpsit to recover amounts paid for a brewery license under an ordinance which was conceded to be invalid. In that case the evidence showed that the several payments were made *under protest* and because a police officer threatened the licensee with arrest if license fee were not paid. Under such facts the verdict of the jury finding that the payment was not voluntarily made was upheld.

The Waukesha Brewing Co. case was another suit to recover money paid for a brewery license under an ordinance which was conceded to be invalid. The evidence disclosed that the license fee was paid under a demand by police and collection officers sent out by the city to the licensee's place of business, and that threats were made by such officers that unless the fees demanded were paid, the licensee would be prosecuted, and its drivers arrested; that the licensee paid the sum demanded under the influence of such threats and to prevent its employees from being arrested. In that case the court in holding that the payment was involuntarily made, said:

"In this State, when a man carrying on a lawful business in a lawful manner is obliged, in order to prevent the forcible interruption of the same

by governmental authority to submit to the unlawful demand of such government, whatever under such circumstances he so pays is not paid voluntarily and may be recovered in an appropriate action."

The Mutual Insurance Company case was an action in assumpsit to recover certain water charges paid by the plaintiff under protest. In that case the plaintiff obtained title to certain property, and the City of Chicago sought to charge it with back water rates, for water supplied to former owners or tenants, which said former owners or tenants had failed to pay. The purchaser refused to pay the charges for back water rates, but was informed by the City of Chicago that unless such bills were paid, it would proceed at once to shut off the water from the premises and it did in fact shut off the water from certain premises. Thereafter the plaintiff paid the back water rates by check enclosed in a letter stating that payment was made under protest, and for the sole reason that appellant had threatened to shut off or had shut off the supply of water from the premises. Under such state of facts the court held that the payment was made under protest and was not voluntarily made, and in the course of its opinion said:

"It is the well settled rule of this State that where one is compelled to make payment of money which the party demanding has no right to receive, in order to prevent injury to his person, business or property, such payment is, in law, made under duress and may be recovered from the party receiving it; and it makes no difference that the demand was made with full knowledge of all the facts provided it was made under duress. Appellee at the time of the payment, expressly stated that it was made under protest and to avoid trouble and damage to his property. The payment was illegally exacted and appellee had the right to recover in an action of assumpsit."

The Fairbank case was an action in assumpsit to recover the sum of $1,250.00 docket fees paid to the clerk of the Probate Court of Cook County under protest, pursuant to a law which required the payment of docket fees based upon the size of the estate. The clerk refused to issue letters testamentary unless the plaintiff paid him, as a condition precedent to the delivery of such letters, a docket fee of $1,250.00 which had been taxed by him against said estate. The plaintiff protested in writing against the payment of the docket fee on the ground that the Statute requiring the same was unconstitutional and void, but the clerk still persisted in his refusal; whereupon plaintiff made payment thereof, and com-

menced proceedings to recover the same. The Supreme
Court held that the Statute in question authorizing the col-
lection of such docket fee was unconstitutional and void and
quoted with approval the foregoing extract from the case
of *City of Chicago* vs. *Northwestern Mutual Insurance Co.*

It is important to note that in the Klinkert case and in
the Waukesha Brewing Co. case, the payments were made
under ordinances which were admitted to be illegal, and that
such payments were made under protest and for the purpose
of avoiding a threatened arrest; that in the Northwestern
Mutual Insurance Co. case payment was made under protest
and to prevent a threatened and unlawful shut-off of the
water supply; that in the Fairbank case payment was made
under protest and for the purpose of obtaining letters of
administration which it was necessary for the plaintiff to
have, and which he could not obtain unless the docket fees
were paid as a condition precedent thereto. Such cases are
authority for the proposition that where license fees are
illegally or unlawfully exacted, and payment thereof has been
made under protest, such payment is considered involuntary,
and may be recovered back. In order to warrant a recovery
under the rule laid down in such cases, two things must co-
exist, first, there must be an invalid law or ordinance, or an
unlawful exaction; second, payment must have been made
under such circumstances to make the same involuntary.

All of such cases, however, differ materially on the facts
from this case. In this case the law under which the license
fees were paid was passed on July 1, 1931, and was effective
January 1, 1932. Claimant paid its license fees on April
16th, April 26th and May 9, 1932. There is nothing whatso-
ever in the record to indicate that the amendment effective
January 1, 1932, was illegal or invalid in any respect; con-
sequently any payments made pursuant thereto cannot be
said to have been illegally or unlawfully exacted. Nor is
there anything in the record to show that the payments were
paid involuntarily, under protest, or under threat of arrest.
Hence the cases cited by claimant have no application to this
case.

As to claimant's contention that it is entitled to an award
on the ground of equity and good conscience, what we have
heretofore said disposes of that contention. Furthermore,

this court as now constituted, has repeatedly held that we have no authority to allow an award solely on the ground of equity and good conscience, unless there would be a legal liability on the part of the State to make payment if the State were suable. *Crabtree* vs. *State*, 7 C. C. R. 207; *Morrissey* vs. *State*, No. 2233, decided at the January, 1934, term of this court; *Van DerLaan* vs. *State*, No. 2324, decided at the October 1934, term of this court.

There being no such liability on the part of the State, award must be denied. Award denied. Claim dismissed.